701 S.E.2d 449

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Edward C. GRIMES, Defendant Below, Appellant.**

**No. 34735.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 2009.

Decided Nov. 16, 2009.

John P. Adams, Esq., Homer A. Speaker, Esq., Public Defender Corporation, Martinsburg, WV, for the Appellant.

Christopher C. Quasebarth, Esq., Chief Deputy Prosecuting Attorney, Martinsburg, WV, for the Appellee.

KETCHUM, Justice:

The appellant, Edward C. Grimes, was found guilty by a jury in the Circuit Court of Berkeley County, West Virginia, of murder of the second degree. The appellant shot and killed the victim, Ronald L. Kidrick, with a handgun in a motel parking lot on July 30, 2005. Pursuant to an order entered on February 7, 2007, the Circuit Court denied the appellant's post-trial motions, entered judgment on the verdict, sentenced the appellant to a determinate term in the penitentiary of 40 years and directed the appellant to pay restitution to health care providers for the victim's final medical expenses in the amount of $17,272.36. This appeal was granted in February 2009.

Although the appellant sets forth several assignments of error, he contends primarily

that the conviction should be set aside because one of the investigating officers, during the course of subsequently preparing a formal police report concerning the shooting, discarded or destroyed his field notes taken at the scene. According to the appellant, the field notes contained exculpatory or impeachment-related evidence, and the destruction thereof undermined the appellant's assertion of self-defense, thereby denying him a fair trial.

This Court has before it the petition for appeal, all matters of record and the briefs filed by counsel. For the reasons stated below, this Court concludes that the appellant's contention concerning the field notes is without merit. Nor do the remaining assignments of error warrant disturbing the verdict of the jury, the various rulings and orders of the Circuit Court or the appellant's sentence.

Accordingly, the appellant's conviction of murder of the second degree, his sentence to a determinate term in the penitentiary of 40 years and the order directing the appellant to pay restitution in the amount of $17,272.36 are affirmed.

## I.

### Factual Background

In July 2005, Mary M. Davis was living with her three children at a motel known as the Relax Inn on Winchester Avenue just south of Martinsburg, West Virginia. Two of the children, Christopher, age 12, and Trey, age 6, were present during the events in question. Trey is the son of the victim, Ronald L. Kidrick. The third child, Jordan, was not present. The appellant, Edward C. Grimes, was involved in a relationship with Mary and lived at the motel from time to time.

In the early morning hours of July 30, 2005, a friend brought Michael Moneypenny to Mary's room at the motel. Moneypenny, a co-worker at Mary's place of employment, was intoxicated and had been beaten and pepper-sprayed in a bar. He was placed in a bed, and Mary was cleaning his wounds when the appellant entered the room. Moneypenny was a stranger to the appellant. The appellant began striking Moneypenny with his fist and with a handgun in the presence of Mary, Christopher and Trey. Moneypenny was ejected from the room, and he collapsed outside.

Chris and Trey went in and out of the motel room to check on Moneypenny. In addition, they made a number of telephone calls to Kidrick, several miles away in Shepherdstown, West Virginia, because Kidrick was supposed to pick them up to attend an upcoming family gathering. During a final call, Chris informed Kidrick that the appellant was present, and Kidrick expressed reluctance to come to the motel. The appellant then took the telephone and said to Kidrick, "Don't use me as scapegoat. If you want some, come and get some." Soon after, the appellant called a friend, Gabriel "Ziggy" McGuire, for a ride away from the motel. In the meantime, Kidrick, asked a friend by the name of Chris Petrucci to drive him from Shepherdstown to the motel. Petrucci later testified that he did not know that Kidrick brought along a handgun.

When Kidrick and Petrucci arrived at the Relax Inn, the appellant and McGuire were walking in the parking lot, and the two children, Christopher and Trey, were checking on Moneypenny. Shortly after exiting Petrucci's vehicle, Kidrick was struck in the forehead by a single bullet fired by the appellant. Kidrick fell to the pavement, and his handgun was later found beside him. The appellant fled the scene on foot. A critical issue in the case is whether the appellant or the victim, Ronald L. Kidrick, was the first to pull out a handgun at the scene. The sole eyewitnesses to the shooting were McGuire and 6 year-old Trey. Their versions of the incident are described below. Neither Michael Moneypenny, who was apparently unconscious, nor Mary M. Davis saw the shooting. Christopher, age 12, and Chris Petrucci heard the shot but were looking elsewhere at that moment. Kidrick was transported by ambulance to City Hospital, Inc., in Martinsburg and died several hours later in the intensive care unit. The cause of death was a single gunshot wound to the head. It was determined that Kidrick had been consuming alcohol and cocaine.

According to investigating officer, Captain K.C. Bohrer of the Berkeley County Sheriff's Department, the parking lot at the motel that morning was, as expected, hectic and confused, with screaming, crying, flashing police lights and the arrival of onlookers. The record indicates that, at that time, Captain Bohrer took field notes while "speaking briefly" with the children and then assigned Sergeant Gary Harmison of the Sheriff's Department to conduct further questioning. Sergeant Harmison subsequently interviewed Trey at City Hospital. Also that morning, Captain Bohrer spoke by telephone with Berkeley County Medical Examiner David Brining concerning the circumstances surrounding Kidrick's death. Thereafter, Brining filed a report which stated, in part: "Initial reports indicate the deceased [Kidrick] pulled a gun on the boyfriend [the appellant] and the boyfriend then pulled a gun and shot the deceased in the head. * * * At the time of this report, Sheriff's Department Investigators are still working the case and additional information may be forthcoming." Although Brining testified later that Captain Bohrer's telephone comments formed the basis of the above statement, Captain Bohrer did not recall giving Brining any information about whether the appellant or Kidrick was the first to pull out a handgun.

After leaving the scene, Captain Bohrer prepared a formal police report concerning the shooting at the motel. No mention was made in the police report of his conversation with the children, Christopher and Trey, at the scene. In the course of completing the report, Captain Bohrer discarded or destroyed his field notes. The Berkeley County Sheriff's Department did not have a policy concerning the preservation of such notes, and Captain Bohrer commonly discarded his notes upon finalizing his formal reports.

On September 7, 2005, the appellant was arrested in the State of Maryland for the shooting of Kidrick. During the drive back to West Virginia, the appellant made an unsolicited statement to the police officers to the effect that he had not wanted any trouble and didn't know why Kidrick wanted to start something, so he [the appellant] "did what he had to do." That statement was admitted, without objection, at trial.

## II.

### Procedural History

Following the appellant's preliminary hearing, a Berkeley County grand jury, in February 2006, returned a single-count indictment charging the appellant with the murder of Ronald L. Kidrick. *W.Va.Code,* 61–2–1 (1991).

On March 6, 2006, the appellant filed an omnibus discovery motion in the Circuit Court. The items sought encompassed exculpatory and impeachment material, as well as evidence of other crimes, wrongs or acts subject to analysis under Rule 404(b) of the West Virginia Rules of Evidence. Among the matters sought were: (1) papers and documents material to the preparation of the defense, (2) statements of witnesses, including police reports and statements before the grand jury and (3) evidence of flight.[1] On July 18, 2006, the appellant filed an additional discovery motion seeking "all notes compiled by any agent of the State during the investigation of this matter." With regard to Rule 404(b), a motion was filed by the State seeking admission of evidence of the beating of Michael Moneypenny at the motel.

With the exception of Captain Bohrer's field notes, which had been discarded or destroyed, the State made available to the appellant all matters of discovery as the case proceeded in due course. In that regard, the defense was made aware of various pretrial statements made by 6 year–old Trey concerning who was the first to pull out a handgun in the motel parking lot. Those

---

1. In addition to citing constitutional authority in support of the March 6, 2006, omnibus discovery motion, the appellant relied upon the West Virginia Rules of Criminal Procedure, as follows: (1) Rule 12(d)(2), providing that a criminal defendant may request notice of the State's intention to use discoverable evidence, (2) Rule 16(a)(1)(C), providing for the inspection and copying of papers or documents in the possession, custody and control of the State which are material to the preparation of the defense and (3) Rule 26.2, providing for the production of statements of witnesses.

statements are contradictory and may be summarized as follows:

1. As discussed above, Medical Examiner Brining stated that, based on his telephone conversation with Captain Bohrer, "initial reports" indicated that the victim, Ronald L. Kidrick, was the first to pull out a handgun. In the absence of the field notes, the implication is that Captain Bohrer obtained that information from Trey, an eyewitness, on the morning of July 30, 2005. Captain Bohrer, however, did not recall telling Brining whether the appellant or Kidrick was the first to pull a handgun.

2. Also on July 30, 2005, Trey was questioned at City Hospital by Sergeant Harmison. Trey stated that the appellant pulled a weapon from his waistband and shot Kidrick. Trey did not specify, however, whether the appellant or Kidrick was the first to pull out a handgun.

3. On March 23, 2006, Captain Bohrer videotaped an interview with Trey. At that time, Trey stated that the appellant was the first to pull out a handgun.[2]

4. Finally, on July 6, 2006, two Berkeley County prosecutors audiotaped an interview of Trey. During the interview Trey stated that the victim, Ronald L. Kidrick, was the first to pull out a handgun in the motel parking lot. Trey said: "My dad pulled a gun first and [the appellant] pulled his and shot my dad." As later characterized by the Circuit Court, that statement was "the first recorded instance in the case of his saying that he saw his father (Mr. Kidrick) draw his gun first—a statement more helpful to the Defendant than the State."

Trial began on November 14, 2006, and the jury was transported to the motel to view the scene of the shooting. The evidence of the State included the beating of Moneypenny, the appellant's comments to Kidrick over the telephone, the shooting of Kidrick at the motel, the appellant's flight from the scene

and his unsolicited statement to the police officers during the drive from Maryland to West Virginia. On direct examination by the State, Trey could not answer the question concerning who first pulled a handgun. During cross-examination by the defense, however, he verified his prior statement to the prosecutors that it was Kidrick. Captain Bohrer testified that any field notes he took at the scene on the morning of the shooting were discarded or destroyed.

The appellant argued that he shot Kidrick in self-defense. Although he did not testify, he called Medical Examiner Brining whose report indicated that Kidrick was the first to pull out a weapon. In addition, the appellant called Gabriel "Ziggy" McGuire who testified that Kidrick pulled out a handgun and that the appellant reacted by pulling out his weapon and shooting Kidrick.

The Circuit Court instructed the jury, *inter alia,* that they could consider the appellant's flight from the scene. In addition, the jury was told that they could draw an unfavorable inference to the State if the jury determined that the State lost, destroyed or failed to preserve any evidence material to the issues in the case. During closing arguments, both sides commented on the discarding by Captain Bohrer of his field notes. The verdict form provided the following options: (1) murder of the first degree, (2) murder of the second degree, (3) voluntary manslaughter and (4) not guilty. The jury found the appellant guilty of murder of the second degree.

On February 7, 2007, the Circuit Court denied the appellant's post-trial motions, entered judgment on the verdict, sentenced the appellant to 40 years in the penitentiary and directed the appellant to pay restitution to health care providers for Kidrick's final medical expenses in the amount of $17,272.36. The appellant was subsequently resentenced

---

**2.** It should be noted that, following the videotaped interview, Captain Bohrer gave $20 to Trey and Christopher to purchase food. As the Circuit Court subsequently commented:

Captain Bohrer credibly testified that he provided the money to the witness and his older brother so that they would be able to eat a

meal; that he knew they had been living in impoverished circumstances for weeks or months in a motel room, and that by coming away from school to be interviewed by him they were missing their only sure hot meal of the day. It is most believable that the officer was simply acting out of human decency.

for purposes of perfecting his appeal to this Court.

### III.

### Discussion

### A.

### The Motions to Dismiss

Prior to trial, the appellant filed motions to dismiss the indictment, alleging: (1) that the discarded field notes presumably contained exculpatory evidence that Kidrick was the initial aggressor and (2) that Captain Bohrer misled the grand jury by, *inter alia*, not revealing that he had information indicating that Ronald L. Kidrick was the first to pull out a weapon. On July 31, 2006, the Circuit Court conducted an evidentiary hearing on the motions. Pursuant to an order entered on October 3, 2006, the motions to dismiss were denied. The order contained findings of fact and conclusions of law. With regard to the field notes, the Circuit Court emphasized that "the witness or witnesses who allegedly possess the possibly exculpatory evidence are available to testify at trial." Raising issues concerning the field notes and Captain Bohrer's grand jury testimony, the appellant challenged the October 3, 2006, order in a petition for a writ of prohibition and mandamus filed in this Court. The petition was refused on November 8, 2006. The rulings set forth in the Circuit Court's October 3, 2006, order are now assigned as error in this appeal.

▮ In *State v. Davis*, 205 W.Va. 569, 519 S.E.2d 852 (1999), this Court observed:

> Our standard of review of a motion to dismiss an indictment is generally *de novo*. However, in addition to the *de novo* standard of review, where an evidentiary hearing is conducted upon a motion to dismiss[,] this Court's "clearly erroneous" standard of review is ordinarily invoked concerning a circuit court's findings of fact.

205 W.Va. at 578, 519 S.E.2d at 861. *State v. Minigh*, 224 W.Va. 112, 680 S.E.2d 127, 134 (2009) (the standard of review regarding a motion to dismiss an indictment is generally *de novo*); *State v. Leonard*, 217 W.Va. 603, 610, 619 S.E.2d 116, 123 (2005) (where an evidentiary hearing is held on a motion to dismiss, the clearly erroneous standard of review applies). Restating the observation in *Davis*, we hold that this Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's "clearly erroneous" standard of review is invoked concerning the circuit court's findings of fact.

▮ With regard to Captain Bohrer's field notes, the appellant relies on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which encompasses the broad principle that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to the accused's guilt or punishment. 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. As subsequently held by this Court in syllabus point 4 of *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): "A prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution." Syl., *State v. Kearns*, 210 W.Va. 167, 556 S.E.2d 812 (2001). Thereafter, in *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007), this Court noted that, although *Brady* addressed only exculpatory evidence, the Supreme Court of the United States later expanded the doctrine to include impeachment evidence. 221 W.Va. at 28, 650 S.E.2d at 127.

▮ Syllabus point 2 of *Youngblood* holds:

> There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either wilfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Syl. pt. 2, *State v. Hawk,* 222 W.Va. 248, 664 S.E.2d 133 (2008); syl. pt. 3, *State v. Farris,* 221 W.Va. 676, 656 S.E.2d 121 (2007). With regard to the third component concerning materiality, the opinion in *Youngblood* confirmed the principle that the suppressed evidence is material only if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different, i.e., whether the whole case would have been put in a different light, sufficient to undermine confidence in the verdict. 221 W.Va. at 32, 650 S.E.2d at 131.

■ Cited in *Youngblood* is *State v. Osakalumi,* 194 W.Va. 758, 461 S.E.2d 504 (1995), syllabus point 2 of which states, in part:

> In determining what consequences should flow from the State's breach of its duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of other evidence produced at the trial to sustain the conviction.

Syl. pt. 3, *State v. Lanham,* 219 W.Va. 710, 639 S.E.2d 802 (2006). *See generally,* Brent G. Filbert, Annotation, *Failure of Police to Preserve Potentially Exculpatory Evidence as Violating Criminal Defendant's Rights Under State Constitution,* 40 A.L.R.5th 113 (1996).

■ In this case, the appellant asserts that Captain Bohrer's field notes, made while speaking to the children at the motel on the morning of the shooting, no doubt included a statement by Trey that Kidrick was the first to pull out a weapon in the parking lot. According to the appellant, the account of that statement as reflected in Captain Bohrer's notes would have been helpful to the appellant as probable exculpatory or impeachment evidence, especially in the context of self-defense. Thus, the notes having been discarded or destroyed, the appellant contends that the indictment should have been dismissed.

As indicated above, the Circuit Court conducted an evidentiary hearing and subsequently upheld the indictment in the pre-trial order of October 3, 2006. Referring to the field notes, the Circuit Court emphasized that "the witness or witnesses who allegedly possess the possibly exculpatory evidence are available to testify at trial." Thereafter, the issue concerning the destruction of the field notes was submitted to the jury.

Looking then to the record, there is nothing in the community of circumstances revealed therein which compels disturbing the conclusion of the Circuit Court. The information in the field notes allegedly provided by Trey was duplicated in the report of Medical Examiner Brining which stated: "Initial reports indicate the deceased [Kidrick] pulled a gun on the boyfriend [the appellant] and the boyfriend then pulled a gun and shot the deceased in the head." Moreover, the value of alleged content of the field notes is marginal. At the time the notes were made, the investigation was in the initial stages. More importantly, Trey, a 6 year–old child, later made additional statements which were contradictory and all of which were made available to the appellant prior to trial. Trey spoke with Sergeant Harmison on July 30, 2005, again with Captain Bohrer on March 23, 2006, and with the Berkeley County prosecutors on July 6, 2006, all with varying results. As characterized by the Circuit Court, the statement to the prosecutors was the first recorded instance in the case of Trey saying that he saw his father, Kidrick, draw his gun first, a statement helpful to the appellant.[3] Finally, an additional witness, Gabriel "Ziggy" McGuire, was available to the appellant. Called by the appellant at trial, McGuire testified that Kidrick was the initial aggressor.

Consequently, this Court is of the opinion that there is no reasonable probability that the result of the proceedings would have been different had Captain Bohrer's field notes been available. This assignment of error is, therefore, without merit.

---

3. The State argues in its brief filed in this Court: "The appellant's attempt to transform the vagaries of this small child's memory of how his dad was shot in the head in his presence does not prove that there was exculpatory evidence that was not turned over to the appellant."

Nor should the indictment have been dismissed because of Captain Bohrer's testimony before the Berkeley County grand jury. The appellant's assertions in that regard were rejected by the Circuit Court in the order of October 3, 2006, following an evidentiary hearing. As stated above, a challenge to that ruling through prohibition and mandamus was rejected by this Court.

[9] Captain Bohrer was the sole witness to testify before the grand jury. The appellant asserts that Bohrer's testimony was misleading and fraudulent because: (1) he did not reveal that he had information, through Trey and as related to Medical Examiner Brining, that Kidrick was the first to pull out a handgun, and (2) he suggested that the appellant's unsolicited statement while being driven back to West Virginia, that he shot Kidrick, amounted to a confession of murder. Thus, the appellant contends that the indictment was wrongfully obtained by the State and should have been dismissed.

 The syllabus point in *Barker v. Fox*, 160 W.Va. 749, 238 S.E.2d 235 (1977), holds: "Except for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." Syl. pt. 1, *State v. David D. W.*, 214 W.Va. 167, 588 S.E.2d 156 (2003); syl. pt. 6, *State v. Layton*, 189 W.Va. 470, 432 S.E.2d 740 (1993); *State ex rel. Pinson v. Maynard*, 181 W.Va. 662, 383 S.E.2d 844 (1989). *See generally*, Vol. 1, F.D. Cleckley, *Handbook on West Virginia Criminal Procedure*, ch. 10, § F. 2. a. (2nd. ed. Michie 1993).

In denying the motion to dismiss, the Circuit Court found that there was sufficient evidence to support the indictment. Moreover, the Circuit Court found no basis to conclude that Captain Bohrer gave perjured testimony or committed fraud before the grand jury. Upon review, this Court agrees. Even without the testimony in question, Captain Bohrer told the grand jury that on the morning of July 30, 2005: (1) the appellant "took the phone, spoke to Mr. Kidrick and an argument ensued," (2) threats were made over the telephone, i.e., "come over here, I'm not afraid of you," (3) thereafter, the appellant and Grimes confronted each other, (4) "Mr. Kidrick had a firearm with him, Mr. Grimes had a firearm with him," (5) the appellant "shot Mr. Kidrick one time in the head" resulting in his death and (6) prior to the shooting, Moneypenny was "pistol-whipped" by the appellant. With regard to the appellant's unsolicited statement to the police that he shot Kidrick, a member of the grand jury asked: "Can that admission of guilt be used?" Captain Bohrer responded: "That's up to the Court to determine if it can or not. That would be subject to a suppression hearing at trial."

While this Court does not condone Captain Bohrer's choice of words before the grand jury in associating the unsolicited statement with a suppression hearing, he made no reference to murder. Also of concern is Bohrer's failure to relate to the grand jury the appellant's complete statement during the drive back to West Virginia which included a comment to the effect that the appellant did not know why Kidrick "wanted to start something." On the other hand, any statement Captain Bohrer obtained from 6 year-old Trey at the scene and not disclosed to the grand jury would have been of marginal value, as shown by Trey's later statements to authorities. Upon the whole, therefore, the record supports the findings of the Circuit Court, and the motion to dismiss the indictment with regard to Captain Bohrer's testimony before the Berkeley County grand jury was properly denied.

## B.

### Remaining Issues

 The appellant assigns as error the admission of evidence at trial of his beating of Michael Moneypenny on the morning of the shooting. Moneypenny, a co-worker of Mary M. Davis and a stranger to the appellant, was in Mary's room when the appellant arrived at the motel. In the presence of Mary and the two children, the appellant struck Moneypenny with his fist and with a handgun. Moneypenny was ejected from the room, and he collapsed outside. Following a hearing, the pre-trial motion of the State to admit evidence of that event was granted by

the Circuit Court by order entered on November 2, 2006. Citing Rule 404(b) of the West Virginia Rules of Evidence, the appellant contends that the evidence unfairly portrayed him before the jury as an impulsive and violent person. Moreover, the appellant suggests that the evidence served no legitimate purpose since there was no dispute that the appellant was present and fired the fatal shot at Kidrick.

Rule 404(b) of the West Virginia Rules of Evidence states:

> *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

Even though a cautionary Rule 404(b) instruction was included in the instructions given to the jury, the Circuit Court determined that Rule 404(b) and the procedures required thereunder do not apply to the evidence concerning Moneypenny. Rather, as reflected in the order of November 2, 2006, the Circuit Court determined the evidence to be "intrinsic" to an understanding of the events leading to the shooting of Kidrick.

This Court is in agreement with the Circuit Court that Rule 404(b) does not apply in these circumstances. In *State v. Dennis,* 216 W.Va. 331, 607 S.E.2d 437 (2004), the defendant challenged his convictions of various offenses, including two counts of sexual assault in the second degree, kidnapping and robbery. The alleged victim was the defendant's former girlfriend. One of the assignments of error raised by the defendant related to the admission of evidence of his abusive, harassing and controlling conduct toward the victim in the months prior to the charged offenses. Citing Rule 404(b), the defendant, in *Dennis,* asserted that the evidence was not relevant to the charges and was overly prejudicial to his defense at trial. The trial court ruled, however, that, inasmuch as the evidence was part of the fabric of the underlying charges, it was outside the customary Rule 404(b) analysis. In *Dennis,*

this Court affirmed the ruling of the trial court and stated:

> After carefully reviewing the record, we cannot say that the trial court abused its discretion in finding that the prior acts constituted intrinsic evidence, not subject to Rule 404(b) analysis. While the acts were not part of a "single criminal episode" or "necessary preliminaries" to the charged offenses, it is difficult to conclude that the evidence was not necessary "to complete the story of the crimes on trial" or otherwise provide context to the crimes charged.

216 W.Va. at 352, 607 S.E.2d at 458.

■ In so holding, this Court, in *Dennis,* relied, in part, upon syllabus point 1 of *State v. Spicer,* 162 W.Va. 127, 245 S.E.2d 922 (1978), which holds: "Other criminal act evidence admissible as part of the *res gestae* or same transaction introduced for the purpose of explaining the crime charged must be confined to that which is reasonably necessary to accomplish such purpose." *State v. Hutchinson,* 215 W.Va. 313, 321, 599 S.E.2d 736, 744 (2004); syl. pt. 4, *State v. Hager,* 204 W.Va. 28, 511 S.E.2d 139 (1998); syl. pt. 2, *State v. McGhee,* 193 W.Va. 164, 455 S.E.2d 533 (1995). In *Hutchinson,* this Court held that Rule 404(b) did not apply where the "other bad acts" of the defendant, which included threatening to kill various people shortly before the fatal shooting of the victim, constituted intrinsic evidence and were admitted to complete the story culminating in the victim's death. 215 W.Va. at 321, 599 S.E.2d at 744.

Here, the beating of Moneypenny was inextricably intertwined with the shooting of Kidrick. As the Circuit Court stated, the episode concerning Moneypenny was allowed "as an intrinsic part of the events of a turbulent evening that had a spill-over effect, as a part of the entire story of the evening[.]" In particular, prior to the shooting of Kidrick, 12 year-old Christopher and 6 year-old Trey were going in and out of the motel room to check on Moneypenny. That fact accounts for their presence in the vicinity of the parking lot at the moment Kidrick was shot. The beating of Moneypenny was part of the *res gestae,* the context the jury was entitled to

hear to have the complete story. Consequently, this assignment of error is without merit.

■ Also without merit are the appellants assignments of error concerning the denial of his motions for an acquittal made during the trial. According to the appellant, the evidence of self-defense warranted a directed verdict in his favor. Moreover, the appellant contends, the lack of evidence of premeditation in the shooting of Kidrick should have resulted in the deletion of murder of the first degree from jury consideration.

■ Syllabus point 1 of *State v. Fischer*, 158 W.Va. 72, 211 S.E.2d 666 (1974), confirms:

"Upon a motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to [the] prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt." *State v. West*, 153 W.Va. 325 [168 S.E.2d 716] (1969).

Syl. pt. 1, *State v. Catlett*, 207 W.Va. 747, 536 S.E.2d 728 (2000); syl. pt. 3, *State v. Taylor*, 200 W.Va. 661, 490 S.E.2d 748 (1997).

In the case to be determined, the brief filed by the State asserts:

Viewing the evidence in the light most favorable to the State, the jury had before it evidence directly and circumstantially inculpating the appellant including: (1) the appellant shot Ronald Kidrick in the head; (2) Kidrick died as a result of that gunshot wound; (3) shortly before the shooting, the appellant beat Moneypenny with his fists and a gun in front of Kidrick's children; (4) one of the children called Kidrick; (5) the appellant told Kidrick "you want some come and get some"; (6) the appellant

then called an associate, Ziggy, to the motel; (7) Kidrick arrived from Shepherdstown shortly thereafter, and the appellant shot him; and (8) the appellant immediately fled the scene. * * * The jury had evidence before it of the appellant's opportunity to reflect on the intent to kill. That evidence included testimony that after getting his jealous anger up beating Moneypenny with a pistol, the appellant taunted Kidrick on the phone "you want some come and get some."

A review of the testimony and exhibits at trial leads this Court to the inexorable conclusion that the appellant's culpability or self-defense with regard to the events on the morning of July 30, 2005, were for the jury to decide. In addition to the matters emphasized by the State, the facts were in sharp conflict concerning whether Kidrick went to the Relax Inn to pick up the children or to confront the appellant. Similarly, there was a question of fact concerning whether the appellant was actually in the process of leaving the motel before Kidrick's arrival. Consequently, those assignments of error are without merit.[4]

Finally, the appellant contends that the imposition of the maximum term of 40 years in the penitentiary under *W.Va.Code*, 61–2–3 (1994), applicable to murder of the second degree, violates standards of proportionality. *See*, Rule 35 of the West Virginia Rules of Criminal Procedure concerning the correction or reduction of sentences.

■ Syllabus point 1 of *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997), holds: "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. pt. 1, *State v. Richardson*, 214 W.Va. 410, 589 S.E.2d 552 (2003); syl. pt. 1, *State v. Watkins*, 214 W.Va. 477, 590 S.E.2d 670 (2003). Moreover, in *State v. Rogers*, 167

---

4. In his concurring opinion in *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), Justice Jackson suggests that, generally, higher courts should rarely intervene and upset criminal convictions where an appraisal of the case reveals that the jury or trial judge believed one set of witnesses, whose testimony showed guilt, yet the defendant asserts that he was convicted by perjury. 344 U.S. at 545, 73 S.Ct. at 429, 97 L.Ed. at 535.

W.Va. 358, 280 S.E.2d 82 (1981), this Court stated: "[S]entences imposed by the trial court, if within the statutory limits and if not based on some impermissible factor are not subject to appellate review." 167 W.Va. at 360, 280 S.E.2d at 84. Syl. pt. 9, *State v. Hays*, 185 W.Va. 664, 408 S.E.2d 614 (1991); syl. pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982).

▮ Here, the appellant shot and killed Kidrick in the presence of 12 year-old Christopher and 6 year-old Trey. Kidrick was Trey's father. Immediately after the shooting, the appellant fled the scene. Earlier that morning, the appellant, using a handgun, assaulted Moneypenny in the children's presence. A motion to reconsider the appellant's sentence was denied by the Circuit Court by order entered on April 5, 2007. The sentence was within statutory limits. Accordingly, this Court concludes that the decision of the Circuit Court concerning sentencing is "protected by the parameters of sound discretion." *State v. Shingleton*, 222 W.Va. 647, 652, 671 S.E.2d 478, 483 (2008).[5]

## IV.

### Conclusion

The appellant's conviction in the Circuit Court of Berkeley County of murder of the second degree, his sentence to a determinate term in the penitentiary of 40 years and the order directing the appellant to pay restitution in the amount of $17,272.36 are affirmed.

Affirmed.

---

**5.** All other assignments of error raised by the appellant are without merit. Those matters include the admission in evidence of certain police reports and the denial of motions for a mistrial and a new trial. Inasmuch as those matters were set forth in the appellant's brief in a cursory or tangential manner, they are not cognizable in this appeal. *Covington v. Smith*, 213 W.Va. 309, 317 n. 8, 582 S.E.2d 756, 764 n. 8 (2003) (issues merely mentioned in passing are deemed waived). The appellant's brief contains no elaboration on the assignment of error concerning the police reports. With regard to the motions for a mistrial and a new trial, the brief filed by the State comments: "The appellant makes no argument factually or legally in his brief as to how the Circuit Court allegedly erred in denying these motions. The appellant does not brief these issues before this Court or cite any place in the record where these matters allegedly occurred."