# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Petitioner Below, Respondent**

vs)  **No. 16-0376** (Wirt County 14-F-12)

**Aaron Anthony Edison,**
**Respondent Below, Petitioner**

**FILED**

**May 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Aaron Anthony Edison, by counsel Keith White, appeals the January 12, 2016, order of the Circuit Court of Wirt County that denied his motion to suppress records and documents, and to quash an indictment that charged him with one count of felony failure to pay support to a minor in violation of West Virginia Code §61-5-29(2). The State of West Virginia, by counsel David A. Stackpole, responds in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

A.J.D.[1] (or the "child") was born on July 16, 2003. On March 10, 2007, petitioner was served with a civil complaint filed in the Family Court of Wirt County for paternity, child support, and reimbursement regarding the child.[2] Thereafter, petitioner was thrice scheduled for paternity testing, but failed to appear each time despite proper notice. Petitioner also failed to appear at a properly noticed January 24, 2008, family court hearing on the complaint. In the February 7, 2008, order resulting from that hearing, the family court found that, since her birth, the child has been in her mother's physical custody and that petitioner is the child's biological father. With regard to child support, the family court found that, for the period from March 1,

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2] That civil case was styled *State of West Virginia, ex rel. West Virginia Department of Health and Human Resources, Bureau for Child Support, [A.J.D.'s mother] v. Aaron A. Edison*; No. 07-D-11.

1

2004, through January 31, 2008, petitioner owed $9,005.20 in reimbursement child support; and that, as of February 1, 2008, petitioner's ongoing child support obligation for the child would be $191.60 per month, which petitioner had the ability to pay.

Petitioner appealed the family court's order to the circuit court, which denied relief on April 14, 2008. Petitioner did not appeal the circuit court's denial of relief to this Court. Thus, the family court's order became final in 2008.

This criminal case began when petitioner was indicted on March 31, 2014, on one count of felony failure to pay child support for the child in violation of West Virginia Code § 61-5-29(2). On May 1, 2014, petitioner filed a "Motion to Suppress and Quash the Indictment." The motion to suppress regarded unspecified "documents/records."

At some point, petitioner filed a pro se petition for the voluntary termination of his parental rights to the child apparently in his civil child support proceeding.[3] At an August 14, 2014, hearing on that civil petition, petitioner argued the following: First, the family court erred in finding that he is the child's biological father absent a genetic test so proving. Second, even if he is the child's biological father, he surrendered and terminated his parental rights to the child under the Safe Haven Act, West Virginia Code §§ 49-6E-1 to -5 (2000).[4] In support of this claim, petitioner testified[5] as follows: He was not married to the child's mother. When the child was born, he received a call from a hospital social worker who asked if he wished to be named as the child's father on her birth certificate. He told the social worker he did not want his name on the birth certificate and that he was relinquishing his parental rights and any responsibilities to the child under the Safe Haven Act. He received notice of each of the three scheduled paternity tests, but refused to take a paternity test on the ground that it would have violated his right to anonymity under the Safe Haven Act. At the conclusion of the hearing, the circuit court denied petitioner's civil petition for voluntary termination of this parental rights.

---

[3] No such petition for voluntary termination of the child is contained in the record on appeal. However, the petition is referenced in the transcript of the August 14, 2014, hearing, which is contained in the record on appeal.

[4] We apply the version of the Safe Haven Act in effect on the date A.J.D. was born, July 16, 2003: W.Va. Code §§ 49-6E-1 to -5 (2000). We also note that the Safe Haven Act was recodified in 2015 and is now found, as modified, at West Virginia Code §§ 49-4-201 to -205.

[5] Petitioner's counsel at the August 14, 2014, hearing was also his defense counsel in the instant criminal proceeding. At the August 14, 2014, hearing, petitioner's counsel asked the court to allow petitioner to make a record regarding petitioner's "exercise of his rights under the Safe Haven laws" because they would be the same facts adduced with regard to petitioner's motion to suppress and to quash his indictment in his criminal proceeding. Petitioner's counsel averred that, at the proper time, he would move the trial court to make the record from the August 14, 2014, civil proceeding part of the record in this criminal case. The circuit court allowed petitioner to testify. Moreover, given that petitioner intended to use the transcript of August 14, 2014, hearing in this criminal case, the circuit court instructed petitioner regarding his right to remain silent. Petitioner waived that right and testified as noted above.

2

Thereafter, in the instant criminal case, the circuit court denied petitioner's motion to suppress "documents/records" and to quash his indictment by order entered January 12, 2016. One week later, at petitioner's plea hearing, the circuit court reviewed petitioner's rights and his understanding of the charges and the plea agreement. Thereafter, petitioner entered a conditional plea to misdemeanor failure to pay child support, but maintained his right to appeal the circuit court's ruling on his motion to suppress and to quash the indictment. The circuit court accepted petitioner's plea and found it to be knowing, intelligent, and voluntary.

At petitioner's March 15, 2016, sentencing hearing, the circuit court denied petitioner's motion to withdraw his guilty plea to misdemeanor failure to pay child support and sentenced petitioner to one year of incarceration. The court also ordered petitioner to pay the child mother's $29,539.58 in "restitution." This appeal followed.

On appeal, petitioner argues that the circuit court erred in failing to grant his motion to suppress and to quash the indictment, and erred in finding that the Safe Haven Act, West Virginia Code §§ 49-6E-1 to -6. (2000) (the "Act") could not be used as a defense to a criminal charge of failure to pay support to a minor.

> This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's 'clearly erroneous' standard of review is invoked concerning the circuit court's findings of fact.

Syl. Pt. 1, *State v. Grimes*, 226 W.Va. 411, 701 S.E.2d 449 (2009).[6]

The Safe Haven Act, West Virginia Code § 49-6E-1 (2000) (or the "Act"), provides as follows:

> A hospital or health care facility operating in this state, shall, without a court order, take possession of a child if the child is voluntarily delivered to the hospital or health care facility by the child's parent within thirty days of the child's birth and the parent did not express an intent to return for the child. A hospital or health care facility that takes possession of a child under this section shall perform any act necessary to protect the physical health and safety of the child. In accepting possession of the child, the hospital or health care facility, may not require the person to identify themsel[f], but shall otherwise respect the person's desire to remain anonymous.

Additionally, West Virginia Code § 49-6E-2(a) (2000), provides that when the hospital or health care facility takes possession of a child under the Act, it must notify the Department of

---

[6] We do not address the standard of review for the denial of a motion to suppress given that petitioner failed to identify in his motion the "documents/records" he sought to suppress. Moreover, on appeal petitioner does not argue that the circuit court erred in failing to suppress any such "documents/records."

3

Health and Human Resources ("DHHR"), who, pursuant to West Virginia Code § 49-6E-2(a) (2000), must take "care, control, and custody of the child." West Virginia Code § 49-6E-3 (2000), further provides that a child in the care, custody, and control of the DHHR under the Act, is deemed an "abandoned child," and that the DHHR must file an abuse and neglect petition regarding the abandoned child. West Virginia Code § 49-6E-4 (2000), provides that the Act is an affirmative defense to prosecution under West Virginia Code § 61-8D-4(a), which sets forth the crimes and penalties for child neglect. Finally, West Virginia Code § 49-6E-5 (2000), provides that the abandoned child shall be eligible for adoption.

On appeal, petitioner argues that he relinquished his parental rights to the child within thirty days of her birth pursuant to the Safe Haven Act, and therefore, he never had any financial duty to support the child.

We wholly reject petitioner's argument that he relinquished his parental rights and any duty to support the child under the Safe Haven Act because it does not apply in this case. First, no hospital or healthcare facility ever took possession of the child pursuant to West Virginia Code § 49-6E-1. Instead, as the family court's 2008 order provides, the child's mother has had physical possession of the child since her birth. Therefore, DHHR never took "care, control, and custody of the child" pursuant to West Virginia Code § 49-6E-2 (2000); never found the child to be abandoned or filed a child abuse and neglect proceeding on her behalf as required by West Virginia Code § 49-6E-3 (2000); and the child was never eligible for adoption pursuant to West Virginia Code § 49-6E-5 (2000).

The Legislature designed the Safe Haven Act to protect the safety and health of a child within the first thirty days of his or her life. The Legislature did not design the Act to be a mechanism by which a parent, who has *not* relinquished the care, custody, and control of a child in accordance with the Act, may avoid paying child support. In fact, the Act does not mention child support at all. Therefore, under the facts of this case, petitioner may not use the Act as an escape route to avoid paying child support where a court has found he has the ability to pay that support.

We further note that petitioner could have taken any one of three paternity tests to prove he was not the child's father, but repeatedly chose not to avail himself of those opportunities. Moreover, petitioner's claim that he did not take a paternity test as a means of protecting his anonymity is wholly without merit given that petitioner was *not* anonymous (1) when the hospital called him and asked if he wished to be placed on the child's birth certificate, (2) when he was properly noticed regarding the three paternity tests and the 2008 family court hearing, and (3) when he appealed the family court's order to the circuit court. Finally, petitioner failed to appeal to this Court the circuit court's order denying relief on the family court's 2008 order. Thus, the 2008 order, which found petitioner to be the child's father and set child support, became a final order at that time and is controlling in this case. Accordingly, petitioner cannot now re-adjudicate that order or claim that he does not owe support for the child.[7]

---

[7] Petitioner also argues that, because the Safe Haven Act is an affirmative defense to criminal child neglect, it must also be a defense to any criminal failure to pay child support. Because the Safe Haven Act does not apply in this case, we do not decide herein whether a

4

Accordingly, for the foregoing reasons, we affirm the circuit court's January 12, 2016, order.

Affirmed.

**ISSUED:** May 19, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

person who abandons a child pursuant to the Safe Haven Act may later be found to owe child support for that abandoned child.