# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2014 Term

_____

No. 13-0769

_____

FILED

**April 23, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
Plaintiff Below, Respondent

**V.**

**DAVID M. COREY,**
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Hampshire County
Honorable Thomas H. Keadle, Judge
Criminal Action No. 12-F-54

**AFFIRMED**

_____

Submitted: April 8, 2014
Filed: April 23, 2014

| | |
|---|---|
| **Lauren M. Wilson** | **Patrick Morrisey** |
| **Sites Law Firm** | **Attorney General** |
| **Keyser, West Virginia** | **Christopher S. Dodrill** |
| **Attorney for Petitioner** | **Assistant Attorney General** |
| | **Charleston, West Virginia** |
| | **Attorneys for Respondent** |

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1.    "Reviewing courts should grant magistrates deference when reviewing warrants for probable cause.    Such warrants should be judged by a 'totality-of-the-circumstances' test." Syllabus point 5, *State v. Thomas*, 187 W. Va. 686, 421 S.E.2d 227 (1992).

2.    "Under the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution, the validity of an affidavit for a search warrant is to be judged by the totality of the information contained in it.  Under this rule, a conclusory affidavit is not acceptable nor is an affidavit based on hearsay acceptable unless there is a substantial basis for crediting the hearsay set out in the affidavit which can include the corroborative efforts of police officers."  Syllabus point 4, *State v. Adkins*, 176 W. Va. 613, 346 S.E.2d 762 (1986).

3.    "Probable cause for the issuance of a search warrant exists if the facts and circumstances provided to a magistrate in a written affidavit are sufficient to warrant the belief of a prudent person of reasonable caution that a crime has been committed and that the specific fruits, instrumentalities, or contraband from that crime presently may be found at a specific location.  It is not enough that a magistrate believes a crime has been committed. The magistrate also must have a reasonable belief that the place or person to be searched will

i

yield certain specific classes of items. There must be a nexus between the criminal activity and the place or person searched and thing seized. The probable cause determination does not depend solely upon individual facts; rather, it depends on the cumulative effect of the facts in the totality of circumstances." Syllabus point 3, *State v. Lilly*, 194 W. Va. 595, 461 S.E.2d 101 (1995).

4.     "Although Rules 401 and 402 of the West Virginia Rules of Evidence strongly encourage the admission of as much evidence as possible, Rule 403 of the West Virginia Rules of Evidence restricts this liberal policy by requiring a balancing of interests to determine whether logically relevant is legally relevant evidence. Specifically, Rule 403 provides that although relevant, evidence may nevertheless be excluded when the danger of unfair prejudice, confusion, or undue delay is disproportionate to the value of the evidence." Syllabus point 9, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

5.     "The determination of what is good cause, pursuant to W. Va. Code, 62-2-1, for a continuance of a trial beyond the term of indictment is in the sound discretion of the trial court, and when good cause is determined a trial court may, pursuant to W. Va. Code, 62-3-1, grant a continuance of a trial beyond the term of indictment at the request of either the prosecutor or defense, or upon the court's own motion." Syllabus point 2, *State ex rel. Shorter v. Hey*, 170 W. Va. 249, 294 S.E.2d 51 (1981).

6.    "Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."  Syllabus point 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981) .

7.    "Prior to the entry of the verdict by a jury, a mistrial is procedurally possible; however, declaring a mistrial after the jury verdict is rendered is improper." Syllabus, *Vilar v. Fenton*, 181 W. Va. 299, 382 S.E.2d 352 (1989).

8.    "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt.  Thus, the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syllabus point 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

**Per Curiam:**

This appeal by David M. Corey ("Mr. Corey") was filed from a judgment of the Circuit Court of Hampshire County sentencing him to life in prison without the possibility of parole. The sentence was imposed after a jury convicted Mr. Corey of first degree murder. In this appeal, Mr. Corey assigned error as follows: (1) invalid search warrant affidavit, (2) erroneous admission of ammunition and knives, (3) denial of right to a speedy trial, (4) denial of mistrial, and (5) insufficiency of the evidence. After a careful review of the briefs, record submitted on appeal, and listening to the arguments of the parties, we affirm.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

The facts of this case show that Mr. Corey's younger brother, Danny Corey ("Danny"), was living at their mother's home in Romney, West Virginia, when he was shot on January 8, 2012, at around 8:00 p.m.[1] Danny was in his bedroom on the second floor of the home at the time of the shooting. The bullet that struck Danny was fired from a rifle outside the home. The bullet traveled through a bedroom window, struck Danny in the back, exited through his left upper arm, penetrated the bedroom door, and came to rest in a wall of the upstairs hallway. At the time of the shooting, Danny's ten-year-old niece, H.C.,[2] and an

---

[1]Danny was about 49 years old, and Mr. Corey was around 52 years old.

[2]H.C. was Mr. Corey's daughter.

1

invalid aunt, Wanda McGuire, were also at home.[3]  H.C. heard the gunshot and ran up to Danny's room, where she found him lying on the floor and bleeding.  H.C. telephoned her grandmother, Dorothy Corey ("Ms. Corey"), at work and told her that Danny had been shot.[4]  Ms. Corey instructed H.C. to call 911.  H.C. called 911, and an ambulance arrived and transported Danny to a hospital where he was declared dead.

While the police were at the home investigating the shooting, they decided to perform gunshot residue tests[5] on Mr. Corey and his older brother, Steve.  Two days after the shooting, Mr. Corey's former girlfriend, Kathy Stonebraker, voluntarily went to the local police and gave a statement that implicated Mr. Corey in the murder of his brother.  Ms. Stonebraker informed the police that she thought Mr. Corey had had some involvement in his brother's death because "[h]e talked about how much he hated him, and he said he hated him enough to kill him."  Ms. Stonebraker also stated that Mr. Corey had hidden a gun in the woods behind his mother's home.  According to Ms. Stonebraker, Mr. Corey was "raging

---

[3]Other persons living in the home, but not there when the shooting occurred, included Mr. Corey's mother, Dorothy Corey, his older brother, Steve Corey, and Steve's girlfriend, Kendra.  Steve and Kendra were at the home of friends watching a football game when the shooting occurred.  Mr. Corey's mother was at work.

[4]Ms. Corey was an LPN who provided nursing services to patients in their homes.

[5]The gunshot residue test involved rubbing swabs across the face and hands of Mr. Corey and Steve.  The swabs would later be tested for the presence of gunshot deposits.

2

mad" at his brother because he believed his brother would inherit their mother's home when she died.

Immediately after Ms. Stonebraker gave her statement, the police obtained a warrant to search Mr. Corey's home.[6] During the search of the exterior of Mr. Corey's home the police uncovered some brush and found a box of rifle cartridges in a bag and five collector knives in a tin box.[7] The police took the rifle cartridges, but placed the knives back under the brush pile. After further investigation, including the receipt of a report that gunshot residue was found on Mr. Corey's right hand, the police arrested him on February 14, 2012. Mr. Corey subsequently was indicted for murder by a grand jury on September 5, 2012.

A four day jury trial was held in April 2013.[8] During the trial, the State put on evidence that the police were not able to determine the specific caliber of the bullet that killed Danny–other than a .30 caliber rifle bullet. However, expert testimony was given that the bullet which killed Danny had "similar design characteristics" as the bullets found at Mr. Corey's residence. Medical evidence indicated the bullet was fired from a rifle. The State presented testimony from two witnesses, David Johnson and David Bridges, who indicated

---

[6]Although Mr. Corey appears to have lived occasionally at his mother's home, he had been living in a rented house for about four months before Danny was killed.

[7]The cartridges and knives were located several feet apart.

[8]The trial was bifurcated into a guilt phase and a mercy phase.

that in December 2011, Mr. Corey had attempted to sell them a rifle and scope, but that they did not purchase the weapon from him.[9] There was also evidence by a witness, Donald McDaniel, who recounted a conversation he had in his home with Mr. Corey on the day before Danny was killed. Mr. McDaniel testified that Mr. Corey stated that he was going to kill his girlfriend, his girlfriend's boyfriend, and Danny. When Mr. Corey made the statement, he pulled out a pistol and showed it to Mr. McDaniel. There additionally was testimony by Ms. Stonebraker that recounted the statement she gave the police implicating Mr. Corey in the murder of Danny. The jury was informed through a State expert witness, Koren Powers, that Mr. Corey had gunshot residue on his right hand on the day that Danny was killed. The State called a witness, Brian Buracker, who testified that a few months before Danny was shot, he heard Mr. Corey state on several occasions that he was going to kill Danny. Mr. Buracker also testified to his observations of Mr. Corey at Danny's funeral:

Q. How did David react at that Funeral?

A. It made me sick. It was like he was at a family reunion, not a funeral.

Q. Was he crying?

A. No.

Q. Show any emotion to you at all?

A. Just a smile on his face. That's about all I got out of him.

---

[9]Mr. Johnson and Mr. Bridges worked at a bar that Mr. Corey patronized.

4

Mr. Corey called six witnesses during his case-in-chief. However, he did not testify. Mr. Corey did not have an alibi witness for his whereabouts at the time Danny was killed. However, Mr. Corey did call two witnesses to show that he made a foodstamp purchase from a convenience store approximately one hour after Danny was shot. One of Mr. Corey's witnesses, Robert White, testified as a gunshot residue expert. Mr. White informed the jury that the gunshot residue found on Mr. Corey could have come from the hand of the police officer who performed the swab test on Mr. Corey and that it was impossible to say that the gunshot residue came from the weapon that killed Danny.

The jury, having heard all the evidence, returned a verdict convicting Mr. Corey of first degree murder. Immediately after the jury returned its guilty verdict, the trial court instructed the jury on the law regarding the issue of whether Mr. Corey should receive mercy. Both parties declined to call any witnesses and chose to present arguments only on the issue of mercy. Thereafter, the jury returned to the jury room to consider whether Mr. Corey should receive mercy. After its deliberations, the jury returned a verdict recommending that Mr. Corey not receive mercy. The trial court subsequently sentenced Mr. Corey to life in prison without the possibility of parole. Mr. Corey filed a post-conviction motion for judgment of acquittal or new trial. The trial court entered an order on June 17, 2013, denying the post-conviction motion. This appeal followed.

## II.

## STANDARD OF REVIEW

The review standard for the circuit court's order denying Mr. Corey's post-conviction motion for judgment of acquittal or new trial is as follows:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). Additional review standards are set out in the relevant sections.

## III.

## DISCUSSION

On appeal to this Court, Mr. Corey argues that error existed as follows: (1) invalid search warrant affidavit, (2) erroneous admission of ammunition and knives, (3) denial of right to a speedy trial, (4) denial of mistrial and (5) insufficiency of the evidence. Each assignment of error will be reviewed individually.

## A. *Invalid Search Warrant Affidavit*

The first issue raised by Mr. Corey is that the affidavit used to obtain search warrants for his home and car was invalid.[10]  Mr. Corey contends that the search warrants were invalid because the accompanying affidavit contained unreliable and uncorroborated hearsay.

In *State v. Thomas*, 187 W. Va. 686, 421 S.E.2d 227 (1992), we quoted approvingly the standard of review of the sufficiency of a search warrant affidavit outlined by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d. 2d 527 (1983):

> [W]e have repeatedly said that after-the-fact scrutiny by the courts of the sufficiency of an affidavit should not take the form of de novo review.  A magistrate's determination of probable cause should be paid great deference by reviewing courts.  A grudging or negative attitude by reviewing courts toward warrants, is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.

*Thomas*, 187 W. Va. at 694, 421 S.E.2d at 235 (quoting *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331, 76 L. Ed. 2d 527 (internal quotations and citations omitted)).  *See State v. Lilly*, 194

---

[10]Although it is not clear from Mr. Corey's brief, it appears that two search warrants were issued, but each was supported by the same affidavit.

W. Va. 595, 600 n.4, 461 S.E.2d 101, 106 n.4 (1995). This Court went on to hold in Syllabus

point 5 of *Thomas*:

> Reviewing courts should grant magistrates deference
> when reviewing warrants for probable cause. Such warrants
> should be judged by a "totality-of-the-circumstances" test.

187 W. Va. 686, 421 S.E.2d 227. Finally, in Syllabus point 4 of *State v. Adkins*, 176 W. Va.

613, 346 S.E.2d 762 (1986), we held the following:

> Under the Fourth Amendment to the United States
> Constitution and Article III, Section 6 of the West Virginia
> Constitution, the validity of an affidavit for a search warrant is to
> be judged by the totality of the information contained in it.
> Under this rule, a conclusory affidavit is not acceptable nor is an
> affidavit based on hearsay acceptable unless there is a substantial
> basis for crediting the hearsay set out in the affidavit which can
> include the corroborative efforts of police officers.

*See State v. Kilmer*, 190 W. Va. 617, 627, 439 S.E.2d 881, 891 (1993).


Mr. Corey asserts that the decision in *State v. Worley*, 179 W. Va. 403, 369

S.E.2d 706 (1988), supports his contention that the search warrant affidavit was invalid. In

*Worley*, the defendant was convicted by a jury of first degree murder. One of the issues the

defendant raised on appeal was that the affidavit used to obtain a search warrant for his

mobile home was invalid. We determined that the affidavit was invalid to support the search

warrant because of the following:

> [T]he affidavit at issue is plainly inadequate. The sole item in
> support of the affidavit was a hearsay statement, by an unknown
> declarant, which tended to show that the deceased was last seen

8

in the company of the defendant. While hearsay may provide probable cause for the issuance of a search warrant, we require the existence of information in the affidavit to corroborate the hearsay statement or to vouch for the declarant's veracity. . . . The factual basis for this affidavit revealed no information that would provide any basis for substantiating the general hearsay statements. It was a "bare bones" affidavit[.]

*Worley*, 179 W. Va. at 409-10, 369 S.E.2d at 712-13.[11]

We find *Worley* to be distinguishable from the facts in the instant case. The affidavit in *Worley* was characterized as "bare bones" because it merely provided a statement that an unknown person saw the defendant with the victim. The affidavit in the instant case was not a "bare bones" affidavit. The information contained in the present affidavit satisfied our probable cause standard for issuance of a search warrant. We have explained the probable cause standard as follows:

Probable cause for the issuance of a search warrant exists if the facts and circumstances provided to a magistrate in a written affidavit are sufficient to warrant the belief of a prudent person of reasonable caution that a crime has been committed and that the specific fruits, instrumentalities, or contraband from that crime presently may be found at a specific location. It is not enough that a magistrate believes a crime has been committed. The magistrate also must have a reasonable belief that the place or person to be searched will yield certain specific classes of items. There must be a nexus between the criminal activity and the place or person searched and thing seized. The probable cause determination does not depend solely upon individual

_____

[11]Ultimately, we found the search in *Worley* was valid because a resident gave consent for the search.

9

> facts; rather, it depends on the cumulative effect of the facts in the totality of circumstances.

Syl. pt. 3, *State v. Lilly*, 194 W. Va. 595, 461 S.E.2d 101 (1995).

The affidavit in the instant case consisted of ten paragraphs.[12]  The affidavit starts out by describing in detail how and where Danny was killed, including a description showing that the trajectory of the bullet indicated it was fired from outside the home.  The affidavit then indicates that Ms. Stonebraker gave the Chief of the Romney Police Department a statement implicating Mr. Corey in Danny's death.  The statement given by Ms. Stonebraker revealed that she knew Mr. Corey for over a year.  The affidavit indicated that, on several occasions, Mr. Corey informed Ms. Stonebraker that he hated Danny for various reasons.  The affidavit revealed that "[w]hen asked, [Ms.] Stonebraker stated she believed [Mr. Corey] could have shot his brother because of the strong anger toward him."  The affidavit described Mr. Corey's involvement with weapons as follows:

> [Ms.] Stonebraker indicated she has seen [Mr. Corey] with a pistol and stated [Mr. Corey] has told her he has a scope.  She

---

[12]It will be noted that we have held that it is improper to consider evidence outside the "four corners" of the search warrant affidavit to determine if probable cause existed to issue the warrant.  *See* Syl. pt. 2, *State v. Adkins*, 176 W. Va. 613, 346 S.E.2d 762 (1986) ("Under Rule 41(c) of the West Virginia Rules of Criminal Procedure, it is improper for a circuit court to permit testimony at a suppression hearing concerning information not contained in the search warrant affidavit to bolster the sufficiency of the affidavit unless such information had been contemporaneously recorded at the time the warrant was issued and incorporated by reference into the search warrant affidavit.").  Consequently, our review is limited to the evidence contained in the affidavit.

10

further indicated he keeps lots of ammunition in his house. She also added [Mr. Corey] has claimed he would be a really good sniper because he is good at sneaking around, and likes to look with binoculars. She further stated he hides a gun above his mother's house in the woods and leaves one behind his mom's house in the yard or in the woods.

Based upon all of the information contained in the affidavit, a search warrant was issued for Mr. Corey's home and vehicle. The warrant limited the search to weapons, ammunition, scope, items involving sniping, and "any notes, logs, or pictures of the victim's residence."

"Our review of the affidavit . . . shows that . . . [i]t is detailed and sets forth ample grounds that establish probable cause." *State v. Bruffey*, 231 W. Va. 502, ___, 745 S.E.2d 540, 551 (2013). Consequently, "[u]nder the totality of the circumstances, we believe the facts contained in the affidavit provided the magistrate with a sufficient basis to demonstrate probable cause for the issuance of the search warrant[s]." *State v. Corbett*, 177 W. Va. 397, 399, 352 S.E.2d 149, 151 (1986).

### B. Admission of Ammunition and Knives

The second issue raised by Mr. Corey is that the trial court committed error in admitting evidence of the ammunition and knives found at his residence. Mr. Corey attacks the admission of this evidence on the grounds that it was irrelevant, confusing, and prejudicial.

11

We have indicated that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). *See* Syl. pt. 2, *State v. Peyatt*, 173 W. Va. 317, 315 S.E.2d 574 (1983) ("Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion."). This Court has held also that, "[a]lthough most rulings of a trial court regarding the admission of evidence are reviewed under an abuse of discretion standard, an appellate court reviews *de novo* the legal analysis underlying a trial court's decision." *State v. Guthrie*, 194 W. Va. 657, 680, 461 S.E.2d 163, 186 (1995) (citations omitted).

Rule 402 of the West Virginia Rules of Evidence provides, in part, that "[e]vidence which is not relevant is not admissible." Relevant evidence has been defined by Rule 401 as evidence that tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pursuant to Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice [or] confusion of the issues[.]" We harmonized the principles of these three rules in Syllabus point 9 of *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994), as follows:

> Although Rules 401 and 402 of the West Virginia Rules
> of Evidence strongly encourage the admission of as much

12

evidence as possible, Rule 403 of the West Virginia Rules of Evidence restricts this liberal policy by requiring a balancing of interests to determine whether logically relevant is legally relevant evidence. Specifically, Rule 403 provides that although relevant, evidence may nevertheless be excluded when the danger of unfair prejudice, confusion, or undue delay is disproportionate to the value of the evidence.

As previously indicated, Mr. Corey has assigned error to the admission of ammunition and knives found at his home. However, Mr. Corey has briefed only the issue of the admission of the knives. No discussion or legal analysis was provided to explain why the ammunition was improperly introduced. This issue was merely mentioned in the heading of the assignment of error. Insofar as Mr. Corey failed to brief the issue of the introduction of the ammunition, we deem that issue waived. *See State v. Lockhart*, 208 W. Va. 622, 627 n.4, 542 S.E.2d 443, 448 n.4 (2000) ("Assignments of error that are not briefed are deemed waived.").[13]

Mr. Corey has argued that evidence related to knives was irrelevant and that the probative value of such evidence was substantially outweighed by the danger of confusion and unfair prejudice. Mr. Corey supports this contention by pointing out that Danny was killed as a result of having been shot, not because he had been stabbed with a knife.

---

[13]It will be noted that, during oral argument, counsel for Mr. Corey did not argue that it was error to admit the ammunition.

The State contends that introduction of evidence regarding the knives was relevant to show that Mr. Corey owned the ammunition that was found in the curtilage of his home.[14] To establish that Mr. Corey owned the ammunition, the State introduced evidence that on January 10, 2012, the police found ammunition and a tin box containing five collector knives buried under some brush in the curtilage of Mr. Corey's home. The police removed the ammunition, but not the knives. After the police arrested Mr. Corey on February 14, 2012, they searched his vehicle. During the search of the vehicle, they found the tin box containing the same five collector knives. The knives were left in the vehicle. Eventually, someone in Mr. Corey's family removed the knives from the car and took them to his mother's home. The police were alerted to this and obtained a search warrant for the knives. During the execution of the search warrant, Ms. Corey turned the knives over to the police and stated that she wanted the knives back because they belonged to Mr. Corey. In view of the evidence regarding the knives, the State contended that Mr. Corey's ownership of the knives that were initially discovered in the curtilage of his home established that he also owned the ammunition that was found at the same location.

---

[14]During the State's opening statement to the jury, the following was said regarding the ammunition and knives:

> You're also going to hear that in the back seat of that vehicle was a tin box of collector's knives, the same tin box that was found in his backyard. . . . It's kind of hard to make an argument that you don't know about the 30-06 ammunition that is buried in your backyard when something else that belongs to you is buried right beside it.

14

We believe that the jury could have concluded that merely because ammunition was found in the curtilage of Mr. Corey's rented home did not mean that he owned it or even knew it was in the curtilage. Thus, we believe that the introduction of evidence concerning the knives became relevant in order to prove to the jury that, because the ammunition and knives were found together and the knives were conclusively proven to belong to Mr. Corey, it could be reasonably inferred that the ammunition also was owned by Mr. Corey.[15] We also do not believe that the probative value of the evidence was substantially outweighed by the danger of confusion or unfair prejudice. This evidence established a logical and clear connection between the ammunition and the knives, and Mr. Corey's ownership of both. Although the evidence of the knives was prejudicial, such evidence was not unfairly prejudicial. It has been observed that, "[b]y restricting [Rule 403] to evidence that will cause unfair prejudice, the drafters meant to caution courts that mere prejudicial effect is not a sufficient reason to refuse admission. Rule 403 is concerned only with unfair prejudice." Franklin D. Cleckley, Louis J. Palmer, Jr. and Robin Jean Davis, Vol. 1, *Handbook on Evidence for West Virginia Lawyers*, § 403.02[3][b], at 1021 (5th ed. 2012). *See State v. Blevins*, 231 W. Va. 135, 744 S.E.2d 245, 260 n.10 (2013) ("In weighing the probative value and the danger of unfair prejudice, it is imperative to note that the purpose of Rule 403 is not to exclude all evidence that results in prejudice to a defendant. It is the danger of unfair

---

[15]Of course, the relevancy of the ammunition was in the State's evidence that the bullet that killed Danny had "similar design characteristics" as the bullets found at Mr. Corey's residence.

15

prejudice to which a reviewing court must be attuned."). Consequently, evidence of the knives was properly admitted for the jury's consideration.

### C. *Denial of Right to Speedy Trial under W. Va. Code § 62-3-1*

Mr. Corey argues that his trial did not occur in the same term of court in which he was indicted as required by W. Va. Code § 62-3-1 (1981) (Repl. Vol. 2010). The State does not dispute Mr. Corey's assertion that he was not tried in the same term of court in which he was indicted. However, the State argues that it established good cause to have the trial continued to the next term of court.

At the outset, we note that as a general rule, "[a] motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion." Syl. pt. 2, *State v. Bush*, 163 W. Va. 168, 255 S.E.2d 539 (1979). In Syllabus point 2 of *State ex rel. Shorter v. Hey*, 170 W. Va. 249, 294 S.E.2d 51 (1981), this Court explained that:

> The determination of what is good cause, pursuant to W. Va. Code, 62-3-1, for a continuance of a trial beyond the term of indictment is in the sound discretion of the trial court, and when good cause is determined a trial court may, pursuant to W. Va. Code, 62-3-1, grant a continuance of a trial beyond the term of indictment at the request of either the prosecutor or defense, or upon the court's own motion.

16

It is provided under W. Va. Code § 62-3-1 that, "[w]hen an indictment is found in any county, against a person for a felony or misdemeanor, the accused, if in custody, . . . unless good cause be shown for a continuance [must], be tried at the same term." This Court has explained that the "one-term" rule of W. Va. Code § 62-3-1 does not embody a right of constitutional dimension, but "provides a personal right to the defendant to be tried more expeditiously than the Constitution requires." *State ex rel. Workman v. Fury*, 168 W. Va. 218, 221, 283 S.E.2d 851, 853 (1981).[16]

In the instant case, the record shows that Mr. Corey was indicted on September 5, 2012. Trial was set in the same term of court for December 13, 2012. However, on December 3, 2012, the prosecutor moved the trial court to continue the trial because the prosecutor was recovering from recent surgery. Mr. Corey filed a motion demanding the trial

---

[16]This Court has distinguished between the one-term rule under W. Va. Code § 62-3-1 and the three-term rule under W. Va. Code § 62-3-21 (1959) (Repl. Vol. 2010). We have held:

> Whereas W. Va. Code 62-3-1, provides a defendant with a statutory right to a trial in the term of his indictment, it is W. Va. Code 62-3-21, rather than W. Va. Code 62-3-1, which is the legislative adoption or declaration of what ordinarily constitutes a speedy trial within the meaning of U.S. Const., amend. VI, and W. Va. Const., art. III, § 14.

Syl. pt.1, *State ex rel. Shorter v. Hey*, 170 W. Va. 249, 294 S.E.2d 51 (1981). Thus, as *Shorter* makes clear, "[t]he one-term rule is not a right of constitutional dimension[.]" *State ex rel. Murray v. Sanders*, 208 W. Va. 258, 262, 539 S.E.2d 765, 769 (2000).

17

take place in the term of court that he was indicted as allowed by W. Va. Code § 62-3-1. The circuit court granted the motion to continue.

In this appeal, Mr. Corey argues that the prosecutor's recovery from surgery did not establish cause to continue the trial. To support this contention, Mr. Corey points out that the prosecutor attended fifteen hearings two days before the trial was to occur. Mr. Corey also argues that the case could have been tried by the assistant prosecutor.

"Upon reviewing the entire record below, there is nothing to indicate that the State intentionally or oppressively sought to delay the trial nor is there a showing that the delay caused any substantial prejudice to [Mr. Corey]." *State v. McCartney*, 228 W. Va. 315, 324, 719 S.E.2d 785, 794 (2011). Although the record does not disclose the nature of the prosecutor's surgery, there is no evidence showing that the prosecutor did not, in fact, have surgery.[17] In fact, Mr. Corey only questions the severity of the debilitating effects of the surgery because the prosecutor subsequently attended several hearings. The State argues that the level of stress in the preparation for a murder trial in which the State was going to call over twenty witnesses, including several expert witnesses, was far greater than preparing for routine hearings. We agree that greater mental and physical stress would ordinarily occur in

---

[17]During oral arguments, it was indicated that the prosecutor had gallbladder surgery.

preparing for and prosecuting a murder trial than in merely preparing for and attending hearings. The greater demands imposed by conducting a murder trial could have had a negative effect on the prosecutor's recovery from surgery. Moreover, the State argues that it was not prudent to allow the assistant prosecutor to try the case because his experience was limited to prosecuting misdemeanor cases in magistrate court, and he had never tried a murder case, nor any felony case. In view of the number of witnesses called in this case and the nature of the diverse expert testimony, we agree with the State that the assistant prosecutor's lack of experience could have adversely impacted the quality of the prosecution.

In view of the reason given by the prosecutor for seeking a continuance and the absence of any prejudice to Mr. Corey, we find the circuit court did not abuse its discretion in granting the continuance.

### D. Denial of Mistrial

Mr. Corey contends that the trial court should have declared a mistrial because a witness improperly testified that he was a felon. It has been established that "[t]he decision to declare a mistrial, discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court." Syl. pt. 8, *State v. Davis*, 182 W. Va. 482, 388 S.E.2d 508 (1989). As we explained in *State v. Williams*, 172 W. Va. 295, 304, 305 S.E.2d 251, 260 (1983), "[a] trial court is empowered to exercise this discretion only when there is

19

a 'manifest necessity' for discharging the jury before it has rendered its verdict." *See* W. Va. Code § 62-3-7 (1923) (Repl. Vol. 2010) ("[I]n any criminal case the court may discharge the jury, when it appears . . . that there is manifest necessity for such discharge.").

The record in this case shows that the trial court ordered both parties to refrain from submitting any evidence that Mr. Corey had a prior criminal record. The parties were instructed to inform their respective witnesses not to mention Mr. Corey's criminal history. Mr. Corey called Samantha Corey[18] as a witness in his case-in-chief. During the State's cross-examination of Samantha, she stated that Mr. Corey was a felon. The prosecutor immediately stopped questioning Samantha and approached the trial court to explain that he did not know Samantha would make the statement. After meeting with the parties at sidebar, the circuit court gave the jury an instruction to disregard Samantha's statement.[19]

---

[18]Samantha was the widow of Mr. Corey's deceased older brother, Greg Corey.

[19]The trial testimony on this matter proceeded as follows:

> PROSECUTOR: Do you know if [Mr. Corey] tried to get on the lease at Valley View Apartments?
>
> WITNESS: No, because he is a felon and you're not allowed to be —
>
> PROSECUTOR: Your Honor, may we have a quick sidebar?
>
> THE COURT: You may. Mr. Ours?
>
> [Counsel and Defendant at bench side.]

(continued...)

20

In this appeal, Mr. Corey contends that a mistrial should have been declared as a result of Samantha informing the jury that he was a felon. The State contends that Mr. Corey's motion for mistrial was waived because it was brought untimely after the jury

---

[19](...continued)

THE COURT: All right, go ahead.

PROSECUTOR: There is no way – this is not my witness. I wasn't trying to elicit that.

THE COURT: What's that?

PROSECUTOR: I wasn't trying to elicit that answer from her. I don't know if the Court wants to give a cautionary instruction or what, but this wasn't my witness. I wasn't trying to elicit that answer from her.

THE COURT: What was her answer?

[FIRST DEFENSE COUNSEL]: She answered that he was a felon.

THE COURT: What?

[FIRST DEFENSE COUNSEL]: She answered that he was a felon.

THE COURT: She knew he was a felon?

[SECOND DEFENSE COUNSEL]: Wasn't she his witness yesterday? He should have instructed her.

THE COURT: I didn't hear any objections.

[FIRST DEFENSE COUNSEL]: We didn't really have a chance to. As soon as she said it, Mr. James wanted a sidebar, Your honor.

21

returned its verdict. The State also contends that the error was harmless in view of the court's curative instruction to disregard the statement.

The initial problem we have with this assignment of error is that Mr. Corey has inadequately briefed the issue of a mistrial. The actual assignment of error, made by Mr. Corey on this issue is as follows: "The Petitioner's Previous Criminal Record Was Heard By The Jury And A Mistrial Should Have Been Declared." Under this assignment of error Mr. Corey's brief sets out one paragraph that merely recites the facts surrounding Samantha's statement. Mr. Corey has failed to cite to any legal authority or make any actual legal argument as to why he was entitled to a mistrial. We have long held that "[a]ssignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived." Syl. pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981). *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").[20]

---

[20]A similar problem was presented to this Court in *State v. Grimes*, 226 W. Va. 411, 701 S.E.2d 449 (2009). In *Grimes,* the defendant assigned error to, among other things, the trial court's denial of his motion for a mistrial. We determined that the issue could not be addressed on appeal:

> Inasmuch as those matters were set forth in the appellant's brief in a cursory or tangential manner, they are not cognizable in this appeal. *Covington v. Smith*, 213 W. Va. 309,

(continued...)

22

Assuming for the sake of argument that this issue was not waived by failure to brief, the second problem we have with this assignment of error is the absence of any indication in the record that a motion for mistrial was ever made at the trial court level.[21] Even so, the State appears to have interpreted the assignment of error to mean that Mr. Corey was appealing a ruling by the trial court denying a post-verdict motion for mistrial. However, the record clearly shows that Mr. Corey made a post-verdict motion for a new trial based upon Samantha's statement, not a post-verdict motion for mistrial.

The distinction between a post-verdict motion for mistrial and a post-verdict motion for a new trial is procedurally important. A post-verdict motion for a new trial is allowed under Rule 33 of the West Virginia Rules of Criminal Procedure. However, a motion for mistrial must be made before a verdict is returned because "[a] motion for mistrial, by its

---

[20](...continued)
317 n. 8, 582 S.E.2d 756, 764 n. 8 (2003) (issues merely mentioned in passing are deemed waived). . . . With regard to the motions for a mistrial and a new trial, the brief filed by the State comments: "The appellant makes no argument factually or legally in his brief as to how the Circuit Court allegedly erred in denying these motions. The appellant does not brief these issues before this Court[.]"

*Grimes*, 226 W. Va. at 422 n.5, 701 S.E.2d at 460 n.5.

[21]We will note that our cases have recognized that trial courts have discretion to *sua sponte* declare a mistrial. *See State v. Ward*, 185 W. Va. 361, 407 S.E.2d 365 (1991) (mistrial declared *sua sponte*); *State v. Gibson*, 181 W. Va. 747, 384 S.E.2d 358 (1989) (same). However, neither Mr. Corey nor the State briefed the mistrial issue in this context.

23

very nature, seeks to end the trial proceedings before a verdict is rendered in order to ensure that the defendant may receive a fair trial." *State v. Sumlin*, 637 S.E.2d 36, 37 (Ga. 2006). This Court has held that, "[p]rior to the entry of the verdict by a jury, a mistrial is procedurally possible; however, declaring a mistrial after the jury verdict is rendered is improper." Syl., *Vilar v. Fenton*, 181 W. Va. 299, 382 S.E.2d 352 (1989). *See Smith v. Andreini*, 223 W. Va. 605, 678 S.E.2d 858 (2009); *State v. Bradford*, 199 W. Va. 338, 484 S.E.2d 221 (1997). Thus, a defendant who "fails to make a timely motion for mistrial . . . waives the right to assert on appeal that the court erred in not declaring a mistrial[.]" *State v. Kays*, 838 N.W.2d 366, 377 (Neb. Ct. App. 2013). *See State v. Hudson*, 680 N.W.2d 603, 610 (Neb. 2004) ("When a party has knowledge during trial of irregularity or misconduct, the party must timely assert his or her right to a mistrial. One may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error.")*; State v. Alliet*, No. 03-2157-CR, 2005 WL 477838, at*5 (Wis. Ct. App. Mar. 2, 2005) ("A defendant waives his or her objection to improper final argument by failing to make a timely motion for mistrial. The motion must be made before the jury returns its verdict.");. Although "this rule may occasionally seem harsh, it exists because both the trial judge and the appellate court find it difficult, if not impossible, to determine whether the failure to move for a mistrial in a timely manner was a tactical decision or an oversight." *Hagan v. Sun Bank of Mid-Florida*, 666 So. 2d 580, 585 (Fla. Dist. Ct. App. 1996). Insofar as Mr. Corey did not make a pre-

24

verdict motion for mistrial and could not make a post-verdict motion for mistrial, this issue is not properly before this Court.[22]

### E.  Insufficiency of the Evidence

The final issue raised by Mr. Corey is that the evidence was insufficient for the jury to convict him of first degree murder.[23]  With regard to the standard of review applied to challenges to the sufficiency of the evidence, this Court has explained as follows:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

---

[22]Assuming, for the sake of argument, that it was error for Samantha to inform the jury that Mr. Corey was a felon, we agree with the State that such error was harmless. We have long held that any "[e]rror in the admission of improper testimony, subject to cure by action of the court, is cured . . . , since the jury is presumed to follow the instructions of the court." Syl. pt. 2, in part, *Rice v. Henderson*, 140 W. Va. 284, 83 S.E.2d 762 (1954). The record shows that Mr. Corey requested a curative instruction be given to the jury to disregard Samantha's statement. The trial court gave such an instruction. Nothing in the record demonstrates that the jury disregarded the court's curative instruction.

[23]Mr. Corey attempted to divide this issue into two assignments of error: factual insufficiency and legal insufficiency. The so-called legal insufficiency assignment of error consists of three sentences. To the extent that a separate legal insufficiency issue was set out as an argument of error, Mr. Corey has not adequately briefed the issue for review by this Court. "'[I]t is . . . well settled, . . . that casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal.'" *State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993)).

could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). In *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996), this Court emphasized the necessity to view all evidence in the light most favorable to the prosecution and to resolve all evidentiary conflicts in favor of the prosecution. *LaRock* provides as follows:

> When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Syl. pt. 2, *LaRock*, *id.*

A review of Mr. Corey's brief shows that his insufficiency of the evidence argument is nothing more than a contention that the evidence should be viewed in the light most favorable to him. However, viewing the evidence as instructed by *LaRock* and *Guthrie*, in the light most favorable to the State, we find the evidence was sufficient for the jury to find beyond a reasonable doubt that Mr. Corey killed Danny.

The State presented evidence to show that, within hours of Danny being killed, both Mr. Corey and his brother, Steve, were tested for gunshot residue. The test results

26

revealed Mr. Corey had gunshot residue on his right hand, but that no gunshot residue was found on Steve.  Mr. Corey presented expert testimony that suggested the gunshot residue came from the police officer who administered the test.  The jury did not believe Mr. Corey's expert.  The State did not have the rifle that killed Danny, but presented evidence that Mr. Corey possessed a rifle and a scope.  Mr. Corey attempted to show that he did not possess a rifle and that no evidence linked the purported rifle he had with the weapon used to kill Danny.  The jury rejected Mr. Corey's efforts to show that he did not possess a rifle and chose to infer that he had disposed of the murder weapon.  The State presented evidence that bullets found at Mr. Corey's home had characteristics similar to that of the bullet that killed Danny.  Mr. Corey presented expert testimony that no evidence was introduced to show that the bullets found at his home were actually the same as that which killed Danny.  The jury rejected Mr. Corey's expert and concluded from the evidence that the bullets were the same.  The State presented evidence to show that, at the time Danny was killed, Mr. Corey's whereabouts could not be accounted for; therefore, he could have been at his mother's home when Danny was killed.  Mr. Corey presented evidence to show that he was about two miles away from his mother's home, at a convenience store, approximately one hour after Danny was killed.  The jury rejected Mr. Corey's crude attempt at establishing an alibi and chose to believe that he could easily have killed Danny and reached the convenience store within an hour or so afterwards.  The State presented evidence to show that, for several reasons, Mr. Corey expressed hatred for Danny.  The jury rejected Mr. Corey's efforts to show that he had no

27

strong dislike of Danny. Finally, the State presented testimony from several witnesses that Mr. Corey stated that he would kill Danny. Mr. Corey offered no evidence to rebut this testimony.

Although "the evidence is largely circumstantial, we have repeatedly held that '[t]he weight of circumstantial evidence, as in the case of direct evidence, is a question for jury determination[.]'" *State v. Biehl*, 224 W. Va. 584, 588, 687 S.E.2d 367, 371 (2009) (internal quotation marks and citation omitted). Finally, we have held that "[i]f, on a trial for murder, the evidence is wholly circumstantial, but as to time, place, motive, means, and conduct it concurs in pointing to the accused as the perpetrator of the crime, he may properly be convicted." *State v. Merritt*, 183 W. Va. 601, 606, 396 S.E.2d 871, 876 (1990) (internal quotations and citations omitted). In sum, the evidence presented by the State was sufficient for a jury to find Mr. Corey guilty beyond a reasonable doubt.

## IV.

## CONCLUSION

In view of the foregoing, we affirm Mr. Corey's conviction for murder in the first degree and his sentence to life in prison without the possibility of parole.

Affirmed.