**No. 17-1086 - <u>Robert Smith v. Carolyn Clark, M.D. and Cabell Huntington Hospital, Inc.</u>**

**FILED**

**June 10, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HUTCHISON, Justice, dissenting, joined by WORKMAN, Justice:

The majority has concluded that "this case was fairly tried" and "fair evidentiary rulings were made thoughtfully by the court." Maj. Op. at 45. However, the trial court excluded the testimony of a critical expert for the plaintiff and allowed a potential juror who had a longstanding and ongoing business relationship with defense counsel to remain on the jury panel. Because it is clear to me that prejudicial error occurred and substantial justice was not done, I would have granted the plaintiff a new trial.[1] Accordingly, I dissent to the majority's decision upholding the jury's verdict.

With respect to the exclusion of the expert testimony, the record in this case shows that there was considerable dispute between the parties prior to trial with regard to the number of experts that would be called to testify. After several hearings, the trial court ruled that each side would be limited to one obstetrical standard of care expert and one nursing standard of care expert. The plaintiff elected to use Dr. Roberts and Patricia Spier, R.N. As trial got underway, the plaintiff called Dr. Roberts to testify as his first witness. At the outset of his testimony, plaintiff's counsel asked Dr. Roberts what conclusion he

---

[1] *See McInarnay v. Hall*, 241 W.Va. 93, --, 818 S.E.2d 919, 924 (2018) (explaining new trials are granted when "prejudicial error has occurred and substantial justice has not been done").

1

had reached after reviewing the medical records with respect to the standard of care as it related to "the practicing doctor," i.e., Dr. Clark, in the case. In response, Dr. Roberts testified, "Well, my opinion is that the care that she received on the day of her delivery did not adhere to an acceptable level of care expected both as an obstetrician *as well as the nursing staff of Cabell Huntington Hospital.*" The defense immediately objected "based on the many agreements and discussions . . . had on this matter between counsel. . . .[stating Dr. Roberts] was to offer no opinions as it relates to the nurses in this case." Plaintiff's counsel responded that Dr. Roberts was, in fact, only intended to be a standard of care expert as to the defendant doctor, that Dr. Roberts's comment was not an intentional violation of the court's pretrial ruling, and that a curative instruction would be appropriate. The hospital maintained, however, that it would be unfair to allow Nurse Spier to testify in light of Dr. Roberts's testimony because the jury would hear two different experts for the plaintiff say that the nurses fell below the standard of care whereas the defense would only have one expert on the issue in accordance with the pretrial ruling. The circuit court hastily agreed that Dr. Roberts had "potentially poisoned the jury with this information." The trial court then refused to give a curative instruction, ruled that Nurse Spier would not be allowed to testify, and ordered the plaintiff to proceed with Dr. Roberts as his standard of care expert with respect to both Dr. Clark and the nursing staff.

Given the circumstances, a curative instruction would have easily remedied Dr. Roberts's offhand comment regarding the nursing staff. At that point in his testimony, Dr. Roberts had not been questioned regarding specific events that had occurred during the

delivery of the child that caused him to form his opinion, nor had any other witness testified. Therefore, an instruction telling the jury to disregard Dr. Roberts's statement about the nursing staff because another witness would be addressing the matter would have been appropriate and just. Instead, the trial court overreacted and employed the drastic remedy of completely excluding Nurse Spier's testimony, significantly prejudicing the plaintiff's case. Unsurprisingly, the defense immediately seized the opportunity on cross examination to attack Dr. Roberts's qualifications to testify about nursing care, eliciting admissions from him that he had not researched or written anything with respect to chain of command policies and how nurses take care of patients. This exchange undoubtedly left the jury with the impression that the plaintiff could not find a nursing expert to support his theory that the nurses were liable for failing to initiate the hospital's chain of command policy when Dr. Clark ignored their inquiries about going to the operating room to perform a cesarean section.

Presumably, the trial court's goal in excluding Nurse Spier's testimony was to prevent prejudice to the defendants. However, the exact opposite occurred as the plaintiff was outnumbered four-to-one on expert testimony with respect to the standard of care. In that regard, not only did the defense have their designated obstetric and nursing experts, they also had the testimony of Dr. Clark and the nursing staff. As this Court has recognized, "[a] medical malpractice case presents a unique situation where the testimony of a defendant . . . often qualifies as expert testimony even when he or she only intends to testify as a fact witness . . . [because the defendant] cannot usually explain his or her

3

conduct without giving some testimony that is expert in nature." *State ex rel. Weirton Med. Ctr. v. Mazzone*, 214 W.Va 146, 155, 587 S.E.2d 122, 131 (2002).

Here, one of the hospital nurses, Mary Meadows, testified that she had absolutely no concern about Dr. Clark's attempt to deliver the baby using forceps. Elaborating, she testified, "Truthfully, I was glad [Dr. Clark] pulled them out because the quickest way to get that baby out would be to put forceps on and deliver it." Plaintiff's counsel immediately objected to this opinion testimony and requested that the trial court allow him to call a nursing expert since "[n]ow they have two people, you know, saying the exact same thing. It's the exact same situation. It's highly prejudicial." The trial court refused and instead gave a simple curative instruction telling the jury to disregard Mary Meadows's last answer and not consider it as evidence. Thus, while the trial court felt that a curative instruction would not remedy Dr. Roberts's off-hand comment about the nursing staff, it concluded otherwise when the defense violated the one-expert ruling and solicited opinion testimony from Mary Meadows regarding whether it was appropriate for Dr. Clark to attempt to deliver the baby with forceps. Certainly, the defendants were entitled to present testimony from their independently-retained experts in addition to their own testimony,[2] but limiting the plaintiff's expert testimony to that of Dr. Roberts alone under these circumstances was simply unfair.

---

[2] In *Mazzone*, this Court concluded the trial court abused its discretion when it refused to allow the defendant doctor to provide testimony of an independently-retained

4

Rather than recognizing the obvious prejudice caused by the exclusion of Nurse Spier's testimony, the majority has chosen to blame the victim and find that no error occurred because plaintiff's counsel used Dr. Roberts as his standard of care expert with respect to the nursing staff. Obviously, when it became apparent that the trial court was going to exclude Nurse Spier's testimony, plaintiff's counsel had no choice but to have Dr. Roberts try to explain to the jury how the nurses violated the applicable standard of care. Had he not done so, the plaintiff would have had no nursing expert at all. It is patently unfair for the majority to have concluded that plaintiff counsel's attempt to make the best of bad situation by agreeing to use Dr. Roberts as his nursing expert constituted an "acquiescence" thereby precluding him from asserting error with respect to the trial court's ruling.

While trial courts are afforded broad discretion with regard to the admission of expert testimony,[3] in this instance, the trial court clearly abused that discretion when it excluded Nurse Spier's testimony. The trial court deprived the plaintiff of the ability to

expert because the doctor testified as an expert on his own behalf. 214 W.Va. at 155, 587 S.E.2d at 131.

[3] "'""The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. pt. 5, *Casto v. Martin*, 159 W.Va. 761, 230 S.E.2d 722 (1976) citing Syl. pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955).' Syllabus Point 2, *State v. Rector*, 167 W.Va. 748, 280 S.E.2d 597 (1981)." Syl. Pt. 3, *State v. Oldaker*, 172 W.Va. 258, 304 S.E.2d 843 (1983).

5

present his nursing expert testimony evidence merely because another witness misspoke. A simple curative instruction would have remedied the situation with little or no risk of unfair prejudice to the defendants. As this Court has long held, any "[e]rror in the admission of improper testimony, subject to cure by action of the court, is cured . . . , since the jury is presumed to follow the instructions of the court." *State v. Corey*, 233 W.Va. 297, 310 n.22, 758 S.E.2d 117, 130 n.22 (2014) *quoting* syl. pt. 2, in part, *Rice v. Henderson*, 140 W.Va. 284, 83 S.E.2d 762 (1954).

I also believe that the trial court abused its discretion when it refused to remove Juror No. 82 for cause from the jury panel.[4] Unfortunately, in rejecting this assigned error, the majority focused its analysis on the fact that Juror No. 82 previously employed Dr. Clark's daughter and completely ignored the long-term, on-going business relationship between Juror No. 82 and the hospital's defense counsel. This Court has made clear that not only do personal relationships require close scrutiny, trial courts are obligated to exclude potential jurors who have significant past or current relationships with a party or law firm. In that regard, this Court has recognized that

> [i]n many West Virginia communities, prospective jurors will often know the parties and their attorneys. Nevertheless, this familiarity does not remove the trial court's obligation to empanel a fair and impartial jury as required by West Virginia's *Constitution*, Article 3, § 10. This obligation

---

[4] "The determination of whether a prospective juror should be excused to avoid bias or prejudice in the jury panel is a matter within the sound discretion of the trial judge." *O'Dell v. Miller*, 211 W.Va. 285, 288, 565 S.E.2d 407, 410 (2002), *citing West Virginia Department of Highways v. Fisher*, 170 W.Va. 7, 289 S.E.2d 213 (1982).

includes striking prospective jurors who have a significant past or current relationship with a party or a law firm.

*O'Dell*, 211 W.Va. at 291, 565 S.E.2d at 413.

With regard to the hospital's attorneys, Juror No. 82 explained, "They've been customers for a very long time. We do pickup and delivery with that particular law firm, so we deliver their clothes and pickup clothes from there." She further stated that the hospital's attorneys were good customers and that she had interacted with them for years. Moreover, when questioned about whether she would have difficulty deciding a case against a client represented by these attorneys, Juror No. 82 responded, "I would have to hope not. You know, I *could try* to be, you know, as impartial as I could be." When questioned further about whether she might have "some predisposition towards favoring a client that they represent," she responded, "*I don't think I would.*"

When determining whether a prospective juror should be removed from the jury panel, the trial court must consider "the totality of the circumstances . . . and where there is a probability of bias the prospective juror must be removed from the panel by the trial court for cause." Syl. Pt. 8, in part, *State v. Newcomb*, 223 W.Va. 843, 679 S.E.2d 675 (2009). Moreover, trial courts must resolve any doubt of possible bias or prejudice in favor of the party seeking to strike for cause. *O'Dell*, 211 W.Va. at 289, 565 S.E.2d at 411. Critically, "actual bias can be shown either by a juror's own admission of bias *or by proof of specific facts which show the juror has such prejudice or connection with the parties at*

*trial that bias is presumed.*"  Syl. Pt. 5, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996) (emphasis added).

Given the long-standing and ongoing business relationship between Juror No. 82 and the attorneys for the hospital, and the equivocal nature of Juror No. 82's responses during voir dire, I believe the trial court abused its discretion by not removing Juror No. 82 from the jury panel for cause.  By refusing to do so, the trial court forced the plaintiff to use one of his peremptory strikes to remove Juror No. 82 from the panel.  As a result, the plaintiff suffered significant prejudice as he was forced to keep another juror upon whom he would have exercised that strike.

For the reasons set forth above, it is clear to me that the circuit court committed reversible error by excluding the testimony of the plaintiff's nursing standard of care expert and refusing to strike for cause the potential juror who had a business relationship with defense counsel.  Together, these errors caused substantial prejudice to the plaintiff and warranted a new trial.  Accordingly, I dissent.  I am authorized to state that Justice Workman joins in this dissent.

8