# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ERNEST DALE COLLINS, JR.,**
**Plaintiff Below, Petitioner**

**v.) No. 25-ICA-285**        (Cir. Ct. Wood Cnty. Case No. CC-54-2022-C-222)

**FILED**

**June 11, 2026**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**J. KEVIN KOCH, M.D.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Ernest Dale Collins, Jr., appeals from the circuit court's June 13, 2025, order dismissing his medical malpractice case with prejudice and awarding sanctions in the form of attorney fees, costs, and expenses. Respondent J. Kevin Koch, M.D., filed a response. Mr. Collins filed a reply.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the record on appeal, the oral and written arguments of counsel, and the applicable law, we find that there is error in the circuit court's decision but no substantial question of law. Thus, this case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure for reversal in a memorandum decision rather than an opinion. For reasons stated below, we vacate and remand for proceedings consistent with this decision.

## I. FACTUAL AND PROCEDURAL HISTORY

Mr. Collins underwent a colonoscopy in August of 2020, and the gastroenterologist removed multiple polyps. One polyp could not be removed, and Mr. Collins was referred to Dr. Koch, a general surgeon, for further treatment. Mr. Collins met with Dr. Koch for an initial consultation on September 3, 2020, during which Dr. Koch advised him to have a right colectomy (surgical removal of the right side of the colon). Mr. Collins agreed, and the procedure was performed on September 30, 2020. The polyp turned out to be nonmalignant.

---

[1] Mr. Collins is represented by Anthony J. Majestro, Esq., Christina L. Smith, Esq., Graham B. Platz, Esq., and Jack Hurney, Esq. Dr. Koch is represented by Richard D. Jones, Esq., Amy R. Humphreys, Esq., and Alexis A. Moore, Esq. Mr. Collins was represented by different counsel below.

1

Following his colectomy, Mr. Collins suffered severe abdominal pain and other complications, so Dr. Koch referred him to another gastroenterologist, Scott Naum, D.O., who suspected that the colectomy might be causing Mr. Collins's problems. Dr. Naum treated Mr. Collins and performed various tests to determine the cause of his symptoms, but none of the tests definitively linked his complaints to his colectomy. In January 2020, Dr. Naum performed an upper endoscopy or esophagogastroduodenoscopy ("EGD") and prescribed oxycodone for pain. In June 2021, he performed a colonoscopy and documented his opinion that Mr. Collins's symptoms might be related to an anastomotic stricture,[2] noting that Mr. Collins had lost fifty-nine pounds since his right colectomy. In July 2021, Dr. Naum ordered a CT angiogram of the pelvis and abdomen, but still finding no definitive cause for Mr. Collins's post-colectomy symptoms, he referred him to a colorectal surgeon for evaluation of his persistent pain. Mr. Collins ultimately underwent additional surgery but continues to experience pain and other problems allegedly resulting from his colectomy.[3]

Mr. Collins filed a single-count complaint, alleging that Dr. Koch negligently breached the applicable standard of care by failing to obtain informed consent regarding the right colectomy. Specifically, Mr. Collins asserted that Dr. Koch failed to advise him of the risks associated with a colectomy. He also failed to advise him of alternative, less invasive options, including doing nothing, that would not have caused the post-operative complications he suffered, and would not have required him to have additional surgery. Dr. Koch denied any negligence and maintained that he fully satisfied the standard of care at all times.

The parties engaged in discovery, disclosing experts and taking depositions. Mr. Collins disclosed one retained expert, Ralph Silverman, M.D., a general and colorectal surgeon, and several of his treating physicians, including his family practice doctor, Gabriella Olson, M.D., gastroenterologist Scott Naum, D.O., pain management specialist Ryan Hostutler, M.D., and neurologist Abdi Seyed Ghodsi, M.D. Dr. Koch disclosed

---

[2] An anastomotic stricture is a narrowing at the site of a surgical connection between two hollow structures, such as the large and small intestines, often leading to obstructive symptoms.

[3] According to Mr. Collins, ever since his right colectomy, he "has endured constant mid-abdominal pain, postprandial [after eating] vomiting, nausea, diarrhea, and significant weight loss, and he requires ongoing treatment, including surgical implantation of a TENS unit." According to Dr. Koch, at least some of Mr. Collins's complaints were preexisting, and related to pancreatitis, gall bladder problems, and alcohol consumption, rather than the surgery performed by Dr. Koch.

himself and Julie K.M. Thacker, M.D., a colorectal surgeon,[4] as experts. When Dr. Naum was deposed, he testified about some alternative treatment options Mr. Collins could have been offered other than colectomy, but he did not testify to a reasonable degree of medical probability regarding the cause of Mr. Collins's post-colectomy symptoms. Instead, he "intuitively" opined that "the symptoms that [Mr. Collins] was exhibiting were all associated with the right hemicolectomy" because "you know, he didn't have symptoms before. He has them afterwards. You'd think they're related."

After discovery was completed, Dr. Koch filed a motion for summary judgment and multiple motions in limine, including a motion to preclude Mr. Collins's doctors from testifying because they could not establish causation. Mr. Collins also filed several motions in limine, including a motion to permit him to offer causation evidence, and all these motions were heard at the pretrial hearing held on July 2, 2024.

Dr. Koch's motion for summary judgment alleged that Mr. Collins had failed to establish a factual issue concerning causation because none of Mr. Collins's experts had opined to a reasonable degree of medical probability that any of Mr. Collins's complaints had been caused by his right colectomy. Dr. Koch's briefing and argument focused in particular on the fact that Dr. Naum had not testified to a reasonable degree of medical probability. Ruling from the bench, the circuit court denied Dr. Koch's motion for summary judgment and also granted Mr. Collins's motion in limine that he be allowed to put on causation evidence related to his post-surgical complaints. When asked to clarify this ruling, the judge said, "it's probably a two-part ruling. The plaintiff is permitted to present their testimony, but you are not prohibited from cross-examination in the areas as indicated on the record." None of these rulings were reduced to writing before trial.

The case proceeded to trial on July 30, 2024. On the third day of trial, the circuit court, acting sua sponte, ordered a mistrial when Mr. Collins's attorney attempted to ask defendant's retained expert about a causation opinion by Dr. Naum which had not been admitted into evidence. On April 22, 2025, the court heard Dr. Koch's motion for sanctions, including an award of attorney fees, costs, and expenses for the entire case to date, and an order dismissing the case with prejudice. This motion was based on trial conduct by Mr. Collins's then attorney, David Sims, to wit, clicking his pen when witnesses were being examined, interrupting witnesses, trying to elicit an opinion from an expert witness which had not been disclosed during discovery, and trying to introduce statements from a medical record and deposition which had not been admitted. On June 13, 2025, the circuit court

---

[4] Dr. Thacker was a retained expert rather than one of Mr. Collins's treating physicians.

granted Dr. Koch's motion in part,[5] awarding attorney fees and expenses for preparing the motion and attending the hearing on sanctions against Mr. Collins's attorney and dismissing the case with prejudice. Mr. Collins appealed from this order.

## II.    STANDARD OF REVIEW

[W]e review imposition of sanctions under an abuse of discretion standard. However, as made clear in *Bartles*, this does not mean that we rubber stamp the sanction decisions of trial courts. Instead, we determine whether the trial court acted within its discretion by examining the factual situation in each case to determine if the "sanction imposed is fashioned to address the identified harm caused by the party's misconduct."

*State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 226 W. Va. 103, 112, 697 S.E.2d 139, 148 (2010) (quoting *Bartles v. Hinkle*, 196 W. Va. 381, 390, 472 S.E.2d 827, 836 (1996)).

## III.    DISCUSSION

On appeal, Mr. Collins raises two assignments of error, either one of which, if established, would be sufficient to merit reversal:

1.  Whether the circuit court erred when it dismissed petitioner's case with prejudice because it found petitioner's trial counsel violated the court's evidentiary rulings.
2.  Whether the circuit court erred when it found petitioner's trial counsel violated the court's evidentiary ruling concerning Dr. Naum's expert testimony.

Because we answer the first question in the affirmative, we find it unnecessary to address petitioner's second assignment of error.

In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case.

---

[5] The circuit court declined to award attorney fees, costs, and expenses for the cost of trial, reasoning that such an award would put Dr. Koch in a better position than if the case had gone to verdict and he had prevailed.

4

Syl. Pt. 2, *Bartles v. Hinkle*, 196 W. Va. 381, 472 S.E.2d 827 (1996).

In its order, the circuit court found that "overwhelming evidence demonstrates that Mr. Sims's conduct was repeated, calculated and represents a pattern of misconduct, and went well beyond anything that might be expected of a 'zealous' advocate.'" Specifically, the circuit court found that Mr. Sims knowingly:

i.      Clicked his pen during witness testimony to signal questioning and testimony he disapproved of.

ii.     Repeatedly interrupted witnesses, not letting them fully answer his questions.

iii.    Attempted to introduce an undisclosed alternative treatment opinion from his expert witness [Dr. Silverman] after the Court expressly prohibited it.

iv.    Sneaked in an "opinion" from Plaintiff's treating physician, Dr. Naum. He did this knowing full well that Dr. Naum's "opinion" was not expressed to a reasonable degree of probability. He also did this knowing full well that Dr. Koch did not have an opportunity to cross-examine Dr. Naum. Moreover, this was in direct violation of the Court's order.

iv.    Purposefully, deliberately and knowingly violated the Court's order one last time by reading inadmissible statements into the record while cross-examining Dr. Koch's expert witness, Dr. Julie Thacker.

The circuit court also held "that Mr. Sims' conduct was cumulative and represents a pattern and practice of disregarding the Court['s] orders and interfering with the administration of justice." We begin our analysis by carefully examining the facts surrounding each alleged instance of misconduct.

## A. Pen Clicking

Following the testimony of Dr. Gabriella Olson, one of Mr. Collins's treating physicians, the court instructed Mr. Collins's counsel, outside the presence of the jury, to stop clicking his pen because it was distracting, made it hard to listen to testimony, and was seemingly done to indicate when counsel did not like questions or answers. The judge said he could hear counsel doing it, and if he could hear it, the jury "**might** be noticing it" as well. Mr. Collins's counsel apologized and said he was not aware that he had been making noise.[6] Nothing in the record indicates that the jury heard the clicking (other than the trial

---

[6] In a brief filed in the circuit court, Mr. Collins's counsel explained that he had ruined several dress shirts when pens leaked so now he made sure to always close a pen when it was not in use.

judge's speculation that if he heard it, maybe the jury could as well) or was affected by it in any way. Mr. Sims was only admonished once and didn't repeat his conduct. Defense counsel did not object to the clicking, complain that it interfered with his representation, or request any relief regarding it. In fact, during oral argument, defense counsel candidly admitted that he had not even been aware of any clicking. This conduct did not violate any order of the court. Although this behavior may have been irritating, it clearly did not justify dismissal with prejudice, or any action other than the admonishment by the court.

## B. Interrupting Witnesses

Mr. Collins's counsel repeatedly interrupted the testimony of witnesses. On the second day of trial, during his direct examination of Dr. Koch, he interrupted three times in quick succession. Each time, defense counsel objected, and the judge said to let the witness finish his answer. A fourth time, defense counsel objected, and the judge said he thought the witness had finished his answer. There was a fifth time when the judge sternly admonished Mr. Collins's counsel, after removing the jury, to allow witnesses to finish their answers. After defense counsel complained that Mr. Collins's attorney was continuing to interrupt Dr. Koch, the judge agreed and warned: "He absolutely is and I am tired of it, Mr. Sims. That is why I sent the jury out. I did not want to get on you once again before the jury. This will not be tolerated." Counsel replied that the witness's answers were not responsive, but the judge said that the witness **was** responding, although counsel might not like the answers, and the judge was going to allow him to answer. A little while later, counsel again interrupted the witness and was told to allow him to finish his answer. On the third and final day of trial, Mr. Sims interrupted both Dr. Koch (at least twice) and Dr. Thacker (at least once). Defense counsel did not request a mistrial or dismissal after any of these interruptions. Although counsel's behavior regarding witnesses may have been rude and unacceptable, and the circuit court acted properly in admonishing him,[7] the repeated interruptions of witnesses, by themselves, did not justify dismissal with prejudice.

---

[7] We recognize that attorneys "should treat all counsel, parties, and witnesses in a civil and courteous manner," Standard One of the W. Va. Standards of Prof. Conduct, and that judges are charged with maintaining dignity, order and decorum within their courtrooms at all times, including the examination of witnesses. *See* W. Va. Code of Jud. Conduct R. 2.8(A) ("A judge shall require order and decorum in proceedings before the court."); W. Va. Code of Jud. Conduct R. 2.8(B) ("A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the judge deals in an official capacity, and **shall require similar conduct of lawyers** [.]") (emphasis added); W. Va. R. Evid. 611(a) ("The court should exercise reasonable control over the mode … of examining witnesses … so as to … protect witnesses from harassment or undue embarrassment.").

## C. "Sneaking in" Another Treatment Option—The Direct Examination of Dr. Silverman On An Undisclosed Opinion

Dr. Silverman was one of Petitioner Collins's expert witnesses. During his deposition, he identified endoscopic mucosal resection ("EMR") as an appropriate alternative treatment. When asked whether EMR was the only other appropriate option, he testified that the "other" option was piecemeal removal by colonoscopy.[8] Near the end of his deposition, Dr. Silverman confirmed that he had offered all his opinions and the basis for those opinions.

Prior to trial, defense counsel submitted a motion in limine to prevent experts from offering additional opinions not disclosed during discovery. Just before Dr. Silverman took the stand, defense counsel approached the bench and asked the court to remind Mr. Sims that he should limit his questioning to the opinions which had been disclosed during the course of discovery, and Mr. Sims agreed to do so.[9] Despite this warning, Mr. Sims asked Dr. Silverman about another alternative treatment, endoscopic submucosal dissection, which had not been discussed during his deposition or mentioned in his expert witness disclosure.

---

[8] In the expert witness disclosure for Dr. Silverman, only EMR was mentioned as an unoffered alternative treatment. This disclosure was not supplemented even after Dr. Koch filed a motion in limine to exclude undisclosed expert opinions. If Dr. Silverman formed additional opinions after he was deposed, his expert witness disclosure should have been supplemented. *See* W. Va. R. Civ. P. Rule 26(e) (1998) ("A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows: … (B) The identity of each person expected to be called as an expert witness at trial, the subject matter on which the expert is expected to testify, and the substance of the expert's testimony."). Rule 26 was amended effective January 24, 2025, but retains a somewhat differently worded requirement to supplement expert witness disclosures.

[9] Prior to Dr. Silverman's testimony, defense counsel made the following request: "We have filed a motion in limine to preclude any opinions that were not expressed in discovery. Since Dr. Silverman's deposition there was no supplemental discovery, so we ask the Court to remind Mr. Sims that his questions only relate to the treatment disclosed." The court replied, "I think that was the Court's ruling," and Mr. Sims said "Yes." However, at another point in the trial, defense counsel stated that "we had an agreement and **perhaps even a court order** that opinions not disclosed during the scope of discovery should not be offered during the course of the case." (Emphasis added). Regardless of whether the court actually ruled on this motion in limine before trial, it clearly did so before Dr. Silverman testified.

Q. Doctor, have you heard of endoscopic submucosal dissection?
A. Yes, there is—

Defense counsel immediately objected, and the circuit court sustained the objection,[10] and sent the jury out. What makes this conduct particularly egregious is that defense counsel asked the court to remind Mr. Collins's counsel of the limitation on disclosed opinions immediately prior to Dr. Silverman's testimony.[11] It could have been worse, though, because defense counsel interrupted Dr. Silverman before he could say whether endoscopic submucosal dissection was a reasonable treatment option and less risky than the right colectomy that was actually done, assuming that is what he was going to say. The jury was brought back in and "instructed to disregard the last question and the witness's last answer." Defense counsel did not request a mistrial or dismissal at this time, and Mr. Collins's attorney made no further effort to solicit additional opinions from Dr. Silverman.

## D. The Pretrial Ruling on Dr. Naum's Testimony

The lower court's pretrial ruling could have been clearer. Defense counsel filed a motion for summary judgment based on plaintiff's failure to testify in deposition that defendant's negligence had injured Mr. Collins to a reasonable degree of medical probability. The circuit court denied the motion for summary judgment, then it granted Mr. Collins's motion to permit his evidence on causation. When defense counsel asked for a clarification of the court's ruling, the court said, "it's probably a two-part ruling. The plaintiff is permitted to present their testimony but you are not prohibited from cross-examination in the areas as indicated on the record." This clarification does not address content; it does not specify what the plaintiff's expert is allowed to say. It would have been better to have a clearer directive reduced to written form. Defendant treats the court's clarification statement as a ruling that Dr. Naum could not issue causation opinions and argues that Mr. Collins deliberately avoided bringing Dr. Naum to trial so he could not be cross-examined.

During trial, however, the following exchange occurred between Mr. Collins's counsel (Mr. Sims) and the judge:

---

[10] On appeal, Mr. Collins does not challenge the court's ruling as either an error of law or an abuse of discretion.

[11] The judge was understandably frustrated by counsel's behavior, stating that "[w]e had a ruling on this and you are violating it within two minutes of being instructed not to do so. Why should you not be held in contempt?" But he temperately refrained from taking any action other than to admonish Mr. Collins's counsel outside the presence of the jury. On appeal, Mr. Collins does not challenge the circuit court's ruling to prevent Dr. Silverman from offering an additional, undisclosed opinion.

THE COURT: And Mr. Sims, was it not your understanding that Dr. Naum was only to be used as a treating physician.

….

Mr. Sims: I don't remember what was said about Dr. Naum, but there was a discussion about Dr. Naum. I hadn't even made a decision if I was going to call him or not. I tried to subpoena him and he moved to Pittsburgh. I don't have a way of getting him here and I know Mr. Jones---

…..

Mr. Jones knows that because he got the same e-mail.

## E. Reading Dr. Naum's Medical Record Into Evidence

Dr. Koch was called as a witness by both parties. During his direct examination in Mr. Collins's case, Mr. Collins's counsel had the witness read out loud part of a medical record from Dr. Naum. The record indicated that Mr. Collins was having problems because of an incisional hernia that Dr. Koch had caused. This record, a progress note marked as Plaintiff's Exhibit 10, was not admitted into evidence because Mr. Collins's counsel did not lay a foundation for its admission. He tried to do that with Dr. Koch, but Dr. Koch said he had not seen it before. There seems to have been some confusion and disagreement as to whether the parties had stipulated the authenticity and admissibility of all the medical records.[12] The trial judge said that he had never been presented with a stipulation and properly ruled in the exercise of his discretion that the records would not be admitted into evidence unless a proper foundation was laid for their admission. *See* W. Va. Trial Ct. R. 23.05 (1999) ("Unless otherwise ordered, stipulations must be in writing, signed by the parties making them or their counsel, and promptly filed with the clerk."). When questioned by the court, defense counsel said that he was not moving for a mistrial, but he was moving to strike the testimony and instruct the jury to disregard it, which the court did.

## F. Asking Dr. Thacker if She Agreed With Dr. Naum that Dr. Koch's Surgery Was "the Cause"

During her direct examination, Dr. Thacker said that she had reviewed and relied on Dr. Naum's deposition and some of his medical records, among other things. On cross-examination, Mr. Sims moved to admit Plaintiff's Exhibit No. 10, a medical record from Dr. Naum,[13] for impeachment purposes, but the circuit court denied this request. Mr. Sims

---

[12] In fact, defense counsel defended Mr. Collins's counsel, saying that "in defense of Mr. Sims, I understand how he may have been confused," and "[i]n fairness to Mr. Sims, he may well have understood that we had an agreement on the entirety of the record, but we were only focused on the imaging study."

[13] Dr. Thacker did not remember seeing this record, so Mr. Collins's counsel could not use her to authenticate it.

had the witness confirm that she had relied on Dr. Naum's deposition in rendering her opinions. Then he said "Dr. Naum concluded that Dr. Koch's surgery was the cause of ---" At this point, defense counsel objected, and the court sustained the objection and sent the jury out. The court granted a mistrial sua sponte after asking defense counsel if there was a motion for mistrial. Defense counsel did not ask for a mistrial but he did not really object to one either. He may not have made up his mind one way or the other yet because he said he wanted to know what kind of instruction the circuit court might give. In any event, instead of requesting a mistrial, he said:

> …it would seem to me as though some type of curative instruction ought to be given to the jury to tell the jury that what Mr. Sims has done and tried to do is inappropriate and not only is it inappropriate, but they should ignore all references to his questioning about Dr. Naum.

Before the circuit court declared a mistrial, the following exchange occurred:

> The Court: Mr. Sims, anything you want to say?
> Mr. Sims: Yes, your honor. The witness clearly testified that she reviewed Dr. Naum's deposition---
> The Court: Mr. Sims, you knew that the Court has ruled that the opinion of Dr. Naum was not admissible…. To be quite frank, I almost started the discussion before we went out to recess with "Mr. Sims, I cannot believe those words came out of your mouth," but the way you conducted yourself in this trial I can believe it. I am granting a mistrial.
> Mr. Jones: On the Court's motion?
> The Court: Yes. I don't believe this bell can be unrung. Bring the jury in.

On appeal, Mr. Collins argues that Dr. Thacker opened the door when she said that she had read and relied on Dr. Naum's deposition, and even if she did not, that Dr. Naum's opinions were proper material for cross-examination of an expert witness.

Having reviewed the circumstances surrounding the alleged misconduct, we now turn to the analysis required by *Bartles*.


## G. Equity

"In formulating the appropriate sanction, a court shall be guided by equitable principles." Syl. Pt. 2, in part, *Bartles v. Hinkle*, 196 W. Va. 381, 472 S.E.2d 827 (1996). Importantly, the misconduct involved in this case was solely that of Mr. Collins's counsel, with no assertion that Mr. Collins himself was responsible in any way for causing the mistrial. If possible, the punishment for that misconduct should fall on counsel and not on his client. *See Anderson v. Kunduru,* 215 W. Va. 484, 489, 600 S.E.2d 196, 201 (2004) (per curiam*)* ("Justice compels that the offending attorney should suffer for his actions, not the

litigants."); *Cox v. State*, 194 W. Va. 210, 220, 460 S.E.2d 25, 35 (1995) (per curiam) (Cleckley, J., concurring) ("If an attorney rather than a client is at fault, the sanction should ordinarily target the culpable attorney."). When a circuit court decides to impose sanctions against an innocent client, it "must give reasons why the sanction should not be directly imposed against the culprit, the attorneys representing" him or her. *Id.* at 220 n.6, 460 S.E.2d at 35 n.6.

We also note that the circuit court did not offer a curative instruction before sua sponte declaring a mistrial (and ultimately dismissing the case with prejudice). Mistrials are "reserved for the most egregious error that cannot be corrected by a curative instruction." *Reed v. Wimmer*, 195 W. Va. 199, 207, 465 S.E.2d 199, 207 (1995). Curative instructions are usually presumed to be effective, because juries are presumed to "follow an instruction to disregard inadmissible evidence … unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong probability that the effect of the evidence would be devastating to the objecting party." 1 Louis J. Palmer, *Handbook on Evidence for West Virginia Lawyers* § 103.03[3][3][c] (7th ed. 2021); *see also* Syl. Pt. 2, *Rice v. Henderson*, 140 W. Va. 284, 83 S.E.2d 762 (1954) ("Error in the admission of improper testimony, subject to cure by action of the court, is cured, … since the jury is presumed to follow the instructions of the court."); *State v. Corey*, 233 W. Va. 297, 310 n.22, 758 S.E.2d 117, 130 n.22 (2014) (noting that "[w]e have long held that" juries are presumed to follow curative instructions when there is improper testimony). In this case, the circuit court should have offered a curative instruction before dismissing the case with prejudice. *See generally Doulamis v. Alpine Lake Prop. Owners Ass'n, Inc.*, 184 W. Va. 107, 112, 399 S.E.2d 689, 694 (1990) ("dismissal, the harshest sanction, should be used sparingly and only after other sanctions have failed to bring about compliance"). Given that Mr. Collins's counsel did not even finish his sentence about what Dr. Naum said, before he was cut off, the presumption that a curative instruction would be effective was not overcome by "an overwhelming probability that the jury [would] be unable to follow the court's instructions, and a strong probability that the effect of the evidence would be devastating to the objecting party." *Handbook on Evidence for West Virginia Lawyers, supra.*

Furthermore, at no time during the trial did the circuit court warn counsel that continuing a certain course of conduct might result in dismissal, let alone a dismissal with prejudice. Nor did defense counsel ever request a mistrial or dismissal. "In almost any conceivable set of circumstances, a circuit court's failure to (1) warn of an impending ultimate sanction, or (2) consider less onerous sanctions before dismissing the case would amount to reversible error." *Woolwine v. Raleigh Gen. Hosp.*, 194 W. Va. 322, 328 n.8, 460 S.E.2d 457, 463 n.8 (1995) (per curiam); *see also Mills v. Davis*, 211 W. Va. 569, 575-76, 567 S.E.2d 285, 291-92 (2002) ("dismissing an action is extremely severe. We have suggested that such a harsh sanction should be used as a last resort, and that the party facing the sanction should have had fair warning that such a severe punishment was in the offing [.]"); Louis J. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* 1185

11

(6th ed. 2025) ("In deciding whether to dismiss an action or claim for failure of the plaintiff to comply with a court order, a trial court should consider … whether the plaintiff was warned that dismissal was a likely sanction [.]").

In its dismissal order, the circuit court focused on the unfairness of requiring Dr. Koch to retry the case without addressing or weighing the right of Mr. Collins to have a trial on the merits. The burden of retrying this case is minimized by the circumstances that discovery is complete, the parties are familiar with each other's positions, and the matter can be tried in three days. If it deems appropriate, the circuit court may address the cost to Dr. Koch of retrying the case by imposing additional monetary sanctions on Mr. Collins's trial counsel.

## H. Seriousness of Conduct

In determining what sanction might be appropriate, circuit courts should consider the seriousness of the conduct. *See* Syl. Pt. 2, in part, *Bartles v. Hinkle*, 196 W. Va. 381, 472 S.E.2d 827 (1996). Although counsel's pen clicking and interruption of witnesses may have been irritating, and even rude, they did not justify a mistrial, let alone a dismissal with prejudice, the most serious sanction available. The other misconduct alleged seems to stem from counsel's confusion about whether the parties had agreed that all of Dr. Naum's medical records would be admissible, confusion about the scope and nature of the circuit court's ruling concerning the admissibility of Dr. Naum's opinions and records (a ruling which appears to have changed during the course of litigation)[14], and honest disagreements concerning the application of the rules of evidence.

## I. Impact on Case and Administration of Justice

The alleged misconduct in this case resulted in a mistrial. If the subsequent dismissal with prejudice is overturned, the parties and court will be put to the burden and expense of another trial, which can be addressed by proper monetary sanctions. That burden and expense must be weighed against the rights of Mr. Collins, an innocent party, to have a jury trial of his claims and the preference under our legal system for trying cases on their merits.

---

[14] Of course, we recognize that trial is a fluid situation, and trial courts are free in the exercise of their sound discretion to reconsider evidentiary rulings as a case unfolds. *See generally Browning v. Hickman,* 235 W. Va. 640, 646, 776 S.E.2d 142, 148 (2015) (a pre-trial "ruling is subject to change when the case unfolds. … Indeed even if nothing unexpected happens at trial, the [trial] judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.") *(*quoting *Luce v. United States*, 469 U.S. 38, 41-42 (1984)).

## J. Mitigating Circumstances

The circuit court's pretrial ruling concerning Dr. Naum's opinions was not clear and was never reduced to writing for easy reference. Given the fact that the circuit court denied Dr. Koch's motion for summary judgment, which was based in large part on whether Dr. Naum's opinions on causation were admissible; granted Mr. Collins's motion in limine to permit causation evidence; and denied Dr. Koch's motion in limine to preclude causation testimony, it was not unreasonable for Mr. Collins's counsel to believe that he could present opinions by Dr. Naum at trial until the court told him otherwise.[15] Even when the court held that Dr. Naum's opinions could not be introduced during direct examination, it was not frivolous to argue that they might be used for impeachment purposes on cross-examination of an expert witness, especially when the expert had read and relied on Dr. Naum's deposition and records. The circuit court's rulings on how medical records that were not admitted could be used were also somewhat inconsistent and potentially confusing. When Dr. Koch was testifying on his own behalf, he was allowed to discuss the contents of an unadmitted medical record he relied on but not to read it into evidence.[16] When Dr. Thacker was testifying, however, Mr. Collins's counsel was not allowed to ask her about the contents of Dr. Naum's deposition she relied on even though he was not reading it to her or asking her to read it.[17]

---

[15] During the pretrial hearing, the parties could not agree on whether all of Mr. Collins's complaints were caused by Dr. Koch's surgery, with Dr. Koch arguing that some of the symptoms, such as abdominal pain, were related to preexisting conditions. The circuit court concluded that causation was a factual question to be resolved by the jury, and that Dr. Naum would be allowed to testify subject to cross-examination. But during the discussion that ensued at trial when Mr. Collins's attorney had Dr. Koch read from a medical record from Dr. Naum, the court agreed with defense counsel that it would not be fair to have Dr. Naum's opinions regarding causation presented to the jury when he was not present to be cross-examined.

[16] When he was examined by his own counsel, Dr. Koch discussed a barium study ordered by Dr. Naum which suggested that Mr. Collins's diarrhea could be related to a "bad pancreas." The court refused to admit the record into evidence without either a stipulation concerning admissibility or a proper foundation but told the witness: "You may testify concerning the content of a particular exhibit, but it is not admitted."

[17] We recognize that the circuit court's order and Dr. Koch's brief state that Mr. Collins's counsel was reading, but what little was uttered before objection appears to be a statement of the deposition's contents, rather than an actual reading. Unless Dr. Naum speaks in the third person, past tense, "Dr. Naum concluded that Dr. Koch's surgery was the cause of—" does not appear to be a reading from the deposition transcript.

13

**K. Isolated Occurrence or Pattern of Misconduct**

The pen clicking and interruption of witnesses, which were relatively minor by themselves, do not appear to be related to the alleged misconduct concerning the examination of witnesses about causation opinions. Furthermore, there was no pattern or practice of misconduct related to the admissibility of causation testimony because each incident involved a different situation governed by a different rule of evidence or procedure.

Mr. Collins's counsel initially ran into trouble concerning causation opinions when he tried to have Dr. Silverman, his retained expert, testify about an alternative treatment option which had not been disclosed in either the expert witness disclosure or the expert's deposition, despite the expert's confirmation that he had covered all the opinions he intended to offer, and a warning by the court not to offer undisclosed opinions immediately prior to the expert's testimony. This ruling had nothing to do with whether Dr. Naum's opinions were inadmissible, either because Dr. Naum was not available to be cross-examined or they had not been offered to a reasonable degree of medical probability.

The misconduct involving Dr. Silverman concerned the scope of a pretrial expert witness disclosure pursuant to Rule 26 of the West Virginia Rules of Civil Procedure as it related to what opinions could be elicited on direct examination. On appeal, Mr. Collins does not challenge the circuit court's ruling concerning the proper scope of expert testimony, a matter entrusted to the sound discretion of the trial judge. *See Jenkins v. CSX Transp., Inc*., 220 W. Va. 721, 649 S.E.2d 294 (2007) (per curiam) (circuit court did not abuse its discretion when it prohibited an expert witness from relying on certain test results which had not been disclosed as a basis for his opinions); *see generally State v. Lambert*, 236 W. Va. 80, 95, 777 S.E.2d 649, 664 (2015) ("the admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong."). Nor does he challenge his duty to supplement expert witness disclosures if an expert developed additional opinions after he was deposed. *See* W. Va. R. Civ. P. 26(e); Syl. Pt. 1, *State ex rel. Tallman v. Tucker*, 234 W. Va. 713, 769 S.E.2d 502 (2015). Rather, he argues that counsel's interrupted attempt to elicit an undisclosed opinion did not justify a dismissal with prejudice, and that it was not part of a pattern of misconduct which collectively might have justified such dismissal. We agree.

The next incident arose during the direct examination of Dr. Koch when Mr. Collins's counsel had the witness read part of a medical record which had not been admitted into evidence. The circuit court instructed the jury to disregard this line of questioning because there was no stipulation on record concerning the authenticity and admissibility of medical records and a foundation had not been laid for admission. When questioning resumed, Mr. Collins's counsel was unable to lay a foundation for admission because Dr. Koch had not seen the record before. Thus, the court was not given an opportunity to uphold

an objection that the reading of Dr. Naum's record would be improper because Dr. Naum did not testify to a reasonable degree of medical probability or was not available for cross-examination.[18] During the discussion about reading the record, however, it became clear that the circuit court did not believe that Dr. Naum's causation opinions were admissible.[19]

The alleged misconduct involving Dr. Koch concerned an attempt to use an unadmitted, unstipulated medical record during the direct examination of a witness. On appeal, Mr. Collins does not assert that this ruling was legally incorrect or an abuse of discretion. His defense was that there was some confusion on whether the parties had agreed to a stipulation which covered the record in question, and this seems to have been the case. Prior to the discussion related to this incident, there was no clear ruling that Dr. Naum's opinions would be generally inadmissible. To justify dismissal with prejudice, there should have been a clear statement of what was prohibited. No less is required when granting a mistrial based on the deliberate and intentional violation of a ruling on a motion in limine, *see* Syl. Pt. 10, *Foster v. Sakhai*, 210 W. Va. 716, 559 S.E.2d 53 (2001), and a new trial is a less drastic measure than a dismissal with prejudice.

The final incident occurred during the cross-examination of Dr. Thacker, when Mr. Collins's counsel tried a different approach to introduce Dr. Naum's opinion. Instead of trying to have Dr. Naum's opinion admitted generally, he attempted to use it for the limited purpose of cross-examination. First, he asked to have Dr. Naum's medical record admitted for impeachment purposes. When the court denied this request, he had Dr. Thacker confirm that she had read and relied on Dr. Naum's deposition. Then he started to question her about what Dr. Naum said, saying "Dr. Naum concluded that Dr. Koch's surgery was the cause of ---" This was the straw that broke the camel's back. At this point, Mr. Collins's counsel was cut off by an objection, and the court removed the jury from the courtroom before sua sponte granting a mistrial.

---

[18] Before bringing the jury back and instructing them to disregard Dr. Koch's testimony, the circuit court told Mr. Collins's counsel "you can attempt to lay a foundation, and we will see if there is an objection." Counsel was unable to authenticate the medical record from Dr. Naum because Dr. Koch was not familiar with it.

[19] Dr. Koch's counsel argued that it would "be improper … to get expert testimony through the back door when Dr. Naum is not here for cross examination" and the circuit court agreed. Although defense counsel vigorously and repeatedly argued that Dr. Naum had not testified to a reasonable degree of medical probability, that rationale was not embraced by the circuit court until its post-trial order which tracked the language of defendant's motion for sanctions. The reason given by the circuit court for holding that evidence is inadmissible is important because it can influence counsel's efforts, if any, to have the evidence admitted on other grounds.

Mr. Collins's counsel argues that experts can rely on evidence which is otherwise inadmissible and may be cross-examined about such reliance. He also argues that Dr. Thacker "opened the door" when she referred to Dr. Naum's deposition and some of his records, and he points out that Dr. Koch was allowed to refer to the contents of a medical record not in evidence when questioned by his attorney and used medical records to cross-examine Dr. Silverman. Without deciding whether the line of questioning about Dr. Naum's opinion should have been allowed on cross-examination, we agree that there was a colorable basis for doing so, and that is sufficient for our current purposes.

Examiners are allowed more freedom on cross-examination than on direct examination, especially when parties or experts are involved. *See generally* Rule 611 of the West Virginia Rules of Evidence (concerning the scope of cross-examination and the use of leading questions).[20] Expert witnesses may rely on inadmissible evidence in forming their opinions, Rule 703, and they may be cross-examined on the basis of their opinions. Rule 705. In such situations, otherwise inadmissible evidence may be discussed for the limited purpose of impeaching the witness. The limited admissibility of such evidence during cross-examination is subject to West Virginia Rule of Evidence 403 which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

---

[20] Rule 611 (b) and (c) provide:

**(b) Scope of Cross-Examination.**
(1) *Party Witness.* A party may be cross-examined on any matter relevant to any issue in the case, including credibility. In the interest of justice, the judge may limit cross-examination with respect to matters not testified to on direct examination.
(2) *Non-Party Witnesses.* Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the non-party witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.
**(c) Leading Questions.** Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:
(1) on cross-examination; and
(2) when a party calls a hostile witness, an expert witness, an adverse party, or a witness identified with an adverse party.

In this case, Dr. Koch was both a party and an expert witness who testified on liability and the standard of care.

evidence."[21] *See State v. Lambert*, 236 W. Va. 80, 96, 777 S.E.2d 649, 665 (2015); *U.S. v. A & S Council Oil Co.*, 947 F.2d 1128, 1134 (4th Cir. 1991) ( "… Rule 705 permits the cross-examiner to require the expert to reveal otherwise-inadmissible underlying information before the jury, subject only to … 403's prejudice/probative value balancing test.").

In this case, there was no objection based on Rule 403 which would have obliged the circuit court to conduct the appropriate balancing. This determination is entrusted to the sound discretion of the circuit court, and we realize it may reach the same decision on remand concerning admissibility that it did before. We express no opinion on how the circuit court should resolve this question if it arises. Our point is that the circuit court's ruling that Dr. Naum's opinions could not be referenced during the direct examination of Dr. Koch did not necessarily mean that they could not be referenced during the cross-examination of Dr. Thacker, an expert witness who read and relied on Dr. Naum's deposition and at least some of his medical records.[22]

## IV. CONCLUSION

We hold that the circuit court abused its discretion in dismissing this matter with prejudice.[23] Accordingly, we vacate the circuit court's order of June 13, 2025, and remand for further proceedings consistent with our decision. We express no opinion as to whether the monetary sanctions awarded in this case were appropriate, leaving it to the circuit court on remand to determine whether the award of attorney fees, costs, and expenses previously

---

[21] A different, more demanding standard applies during direct examination. If the proponent of the expert testimony seeks to introduce the inadmissible basis of an expert opinion on direct examination, that party must satisfy the balancing test embodied in Rule 703 of the West Virginia Rules of Evidence that states in pertinent part "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *See* Syl. Pt. 3, *Doe v. Wal-Mart Stores, Inc.*, 210 W. Va. 664, 558 S.E.2d 663 (2001), *overruled on other grounds by State ex rel. March-Westin Co., Inc. v. Gaujot,* 247 W. Va. 283, 291 n.10, 879 S.E.2d 770, 778 n.10 (2022).

[22] Admittedly, the better practice would have been to approach the bench before attempting to introduce evidence under a different theory.

[23] Because a new trial will be required in any case, we do not address whether the circuit court abused its discretion in granting a mistrial, which involves a closer question than dismissing with prejudice, the harshest of sanctions. *See Mills v. Davis*, 211 W. Va. 569, 575, 567 S.E.2d 285, 291 (2002) ("the more severe the sanction, the more restraint a trial court must show").

awarded should be modified in any way, a question we were not asked to determine on this appeal.

Vacated and Remanded.

**ISSUED:** June 11, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White